## No. 11,347.

SUCCESSION OF LOUISE MARIE REISS, WIFE OF HENRY J. ROL-
LING, JR.

Plaintiff, the mother-in-law, appeals from a judgment ordering her son-in-law to
send his children, aged respectively six and eight years, issue of the marriage
with her late daughter, to visit her, and directing further that she shall visit
the grandchildren at their father's home in alternate weeks, on such days, as
the parties may agree.

She complains of the judgment in so far as she is to visit the children, and asks
that it be limited to the imperative duty of the children to visit her. There is
very little difference in principle between the parties as disclosed by the evi-
dence.

The husband does not deny the filial piety that is due by the children.

Differences and incompatibilities have arisen shocking to the grandparent and
that may prove painful, in course of time, to the children. The question
is of first impression in the courts of this State. In France, under similar
laws, the courts and commentators greatly differ upon the subject.

There are well considered decisions holding that the precept: Honor thy father
and thy mother, as embodied in the Civil Code, includes the grandmother or
grandfather as a legal obligation.

Other courts and certain writers lay down the principle that under a law of nat-
ure the child is under the authority of the father or mother alone, and that
the law has conformed to natural law, and that the judge has no authority to
intervene.

The court of the first instance has pronounced judgment based upon the prin-
ciples that the parties in their testimony admit is correct, but which they have
not followed.

A PPEAL from the Civil District Court for the Parish of Orleans.
*Theard, J.*

### *A. L. Tissot* for Appellant:

These proceedings come before this Honorable Court on an appeal from a judg-
ment, of a mixed character, rendered herein on a rule to compel a father and
natural tutor to send his children to visit their grandmother, at such a time as
the court might determine, at her residence and domicile.

The evidence shows that for years past the defendant had deprived the plain-
tiff of the privilege of seeing her grandchildren, or of having access to them.
He had no reason for his actions. Mrs. Reiss is a lady of means and refinement.
She has a palatial residence on Esplanade avenue, at No. 281, and can there re-
ceive and entertain these children, and herself, in the most elegant style.
Since a number of years this defendant has been practising the most petty,
narrow-minded annoyances directed against his mother-in-law, leading to the
belief and conviction that he is animated by no other motive but malice.

The law will not uphold the father in this unaccountable conduct.

The rules governing the paternal authority are to be found in our Civil Code
Arts. 216 to 237. In our jurisprudence we have been unable to find any ad-

judicated cases covering our subject. But in the French jurisprudence the question has presented itself, and has been decided in the sense of our contention. As the articles of the Code Napoleon are similar to our own, we may then be permitted to draw light from the French tribunals and commentators.

The articles of the Code Napoleon corresponding with our own are Arts. 371 to 387.

These, like our own, give the father full authority over his children. But is the authority thus conferred absolute, and such as can be wielded arbitrarily, and in the manner attempted by the defendant herein; or is it subject to the control of the court? The question was, at one time, controverted in France, but it is now finally settled in the sense for which we contend herein.

We find an arrêt of the Court of Nancy of May 28, 1868 (Renaud C. Marx), which decides:

La puissance paternelle n'est point absolue, et reste soumise au contrôle des tribunaux, qui peuvent, par exemple, en cas d'interdiction par le père de tous rapports entre ses enfants et leur aïeule, autoriser celle-ci à les voir et à correspondre avec eux sous les conditions dont le juge a l'appreciation *souveraine. Code Nap. 371, 372, 373.*

Pursuing further our study of the question, we come to a decision of greater value and authority than that of these " Cour d'appels" above cited. It is one rendered by the Court of Cassation of 1870. It is there decided:

Le père, seul investi de la plénitude de la puissance paternelle, a le droit d'interdire la visite à ses enfants aux personnes dont l'influence lui semblerait nuisible; mais il ne peut user de ce droit, en ce qui concerne les aïeules, que lorsqu'il existe des motifs graves et exceptionnels, dont les tribunaux *restent appréciateurs.*

En pareil cas, et s'il y a exagération ou abus par le père du droit qui lui appartient, les tribunaux peuvent régler ce qu'exigent, d'une part, l'autorité du père, et de l'autre, l'interêt des enfants, ainsi que la réciprocité des droits et des devoirs établie entre eux et leurs autres ascendants par la loi morale et la loi civile.

In Dalloz and Vergé: Codes annotés, Code Civil, edition of 1873, we find these decisions commented upon, and approvingly cited. Applying them to Art. 273 of the Code Napoleon, which reads: Le père seul exerce cette autorité durant le mariage, the paternal authority, they resume and conclude as follows:

19. Ainsi, bien que le père, seul investi du droit de diriger l'éducation de ses enfants, puisse leur interdire la visite des personnes, même de leur famille, dont il croirait avoir à craindre l'influence, cependant il n'a ce pouvoir, à l'égard des membres de la famille auxquels l'enfant doit honneur et respect en vertu de l'article 371 C. Civ., qu'autant que sa détermination est commandée par d'impérieuses raisons, qui sont soumises au contrôle des tribunaux.

20. Et, spécialement, l'interdiction par le père, de tout rapport entre ses enfants et leurs ascendants (maternels), ne peut être sanctionnée sans examen par les tribunaux, sous prétexte que le père n'a pas à rendre compte des motifs de cette interdiction; c'est aux tribunaux à apprécier, en cas pareil, la légitimité d'un tel usage de la puissance paternelle. D. P. 57. 1. 273. 8 Julliet, 1857.

21. De même, si par des raisons graves et exceptionnelles, il peut appartenir au père d'interdire tout rapport entre ses enfants et leurs ascendants, les tribunaux, en cette matière comme en toute autre, sont investis due droit d'apprécier, s'il y a, *de la part du père, usage légitime ou abus du droit de la puissance* paternelle. Reg. 12 Juil., 1870; D. P. 71, 1, 218.

22. Ainsi ils peuvent autoriser l'aieul à visiter l'enfant, et même à le recevoir chez lui dans certaines conditions à le faire sortir une fois sur trois sorties ordinaries, et à le garder plusiers jours lors des grandes vacances. Même arrêt.

23. Suivant d'autres arrêts, les droits de la puissance paternelle doivent être conciliés avec le respect et les devoirs de l'enfant envers les aïeuls et aïeules. Paris, 27 Juin, 1867; D. P. 67, 5, 348; Nancy, 28 Mai, 1868; D. P. 68, 2, 176.

24. Ainsi, en cas de prédécés de la mère et de nouveau mariage du père, l'aïeule maternelle peut être autorisée à visiter son petit-fils dans la maison d'éducation où son père l'a placé, et même à le faire sortir à des jours déterminés, dans une juste mesure qu'il appartient aux tribunaux de fixer. Même arrêt du 27 Juin, 1867.

25. Pareillement, il appartient aux tribunaux, alors que le père a prohibé d'une manière absolue toute visite d'une aïeule maternelle à son petit-fils, et interdit toute correspondance entre eux, d'autoriser cette visite et cette correspondance, sous telles conditions qu'ils jugent utiles à l'intérêt de l'enfant. Arrêt précité du 28 Mai, 1868.

26. Jugé encore que le pére ne peut faire résulter de la puissance paternelle dont il est investi le droit d'empêcher, sans motifs légitimes, l'aïeul de recevoir son enfant, par exemple, après la dissolution du mariage, un aïeul maternel de visiter cet enfant, et même de le faire sortir, à des jours et dans une mesure determinés par les juges, de la maison d'éducation où le père l'a placé. Ainsi l'aïeul peut être autorisé à garder l'enfant chez lui pendant une partie des vacances, alors, notamment, que l'éloignement de son domicile ne lui permet pas de ramener cet enfant chaque soir chez son pére. Paris 14 Août, 1869; D. P. 69, 2, 238.

We have followed up the "jurisprudence générale" of Dalloz to the year 1882, and can find no more adjudicated cases than those above cited, for the reason, doubtless, that the jurisprudence of France is considered as settled by the above cases.

Laurent is of a different opinion. He refers to the decisions cited above and criticises them. But his opinion, howsoever valuable, can not overturn the constant jurisprudence which carries an executory sanction. F. Laurent, Droit Civil Français, Vol. 4, pp. 360 et seq., Nos. 268 et seq.

*Bernard McCloskey* for Appellant:

There is no law in this State which directly or indirectly gives to grandparents the right to interfere between father and child. Civil Code, Art. 217, etc.; Laurent, Vol. 4, p. 316.

The court will not interfere in the exercise of the authority and discretion vested in the father, after the death of his wife, as to whom the children should visit·

The paternal power, as known to our laws, is traceable to the Roman Law—which based the power upon the principle that every family was, and of right ought to be, one body, with one will and one executive. Hadley, Lectures on Roman Law, 105, 122.

The opinion of the court was delivered by

BREAUX, J. The father and tutor of two minor children, one eight and the other six years of age, is defendant in a rule issued at the instance of their maternal grandmother to compel him to send his

children to visit her, at her residence and domicil, on such days and at such hours as the court may deem proper to determine.

She alleges that he arbitrarily, wantonly, maliciously and cruelly denies her the privilege of seeing her grandchildren, thus abusing parental authority, controllable by the courts.

The defendant denies that he has refused to mover in rule the privilege of visiting his children, and avers that he is willing that she shall visit his children.

The judgment of the court *a qua* makes the rule absolute and orders the father to send the children to visit their grandmother, and further orders that the grandmother shall visit the children at their father's home in alternate weeks on such days as the parties may agree, provided the visits do not in any manner interfere with the schooling of the children.

Before this court the appellant asks that her rule be made absolute, commanding the defendant to send the children to visit her without reference to any visit by her.

The appellee, in his answer to the appeal, prays for a dismissal of the rule.

The mother of these children has been dead about six years.

They live with the father.

The relations between the son-in-law and mother-in-law are not only strained but acrimonious.

More than three years have elapsed since he has sent his children to visit their grandmother.

She has requested him, she testifies, to send them, but he failed to comply with the request.

The defendant's household consists of his father and other members of his family. They and these children live at the same residence.

The relations of plaintiff with the members of the son-in-law's family are not, it seems, of the most pleasant character.

The plaintiff by her testimony creates the impression that the coolness and feeling existing would render the visit anything but pleasant.

Moments with her grandchildren while on such visits which, under other circumstances, would be highly enjoyed, at this time would possibly only cause irritation and bad blood.

Their differences are, we are led to believe, of an entirely personal

character and have no reference to the standing of the parties, in regard to which there is not the most remote suggestion.

The plaintiff states as a witness that she does not entertain any objection on that score.

The witness testifies:

Q. "Have you visited those children at the house of their father?"

A. "No sir."

Q. "Why not?"

A. "Why not! Because I thought that they should be sent, to see me, and not to go there and see them."

Q. "Why not call upon these children at the home of their father to see them?"

A. "Because I thought it was proper to send them to me."

Q. "Is that the only reason?"

A. "That is my reason that I wish to give."

Q. "Do I understand you, then, as refusing to visit those children at the home of their father?"

A. "No sir; I don't refuse, but I have other reasons. I may be wrong, but at the same time I have never visited the Rolling family, and I didn't think it was my place to go to see those children there, as I think their place was to come to see me."

When examined as a witness the son-in-law, in answer to the question:

Q. "Don't you think that there is a law of nature that children should visit their grandparents?"

Answer. "I think that's right."

Manifestly the difference between these parties is inconsiderable, and would not be sufficient to arrest attention, were it not that it affects the good relation and intimacy that should prevail between these little children and their grandmother.

While we appreciate the affection that moves her to seek the occasional company of the offspring of her daughter, this court's jurisdiction does not include the cause pleaded.

The issue is not incidental to any other cause.

However disinclined we are to discountenance causes of action such as the one under consideration—for they are inspired by a true and commendable impulse—we find no authority in law to entertain jurisdiction of the issue presented. The question involved is *res nova* in this State.

In interpreting articles of the Civil Code in France, similar to ours on the subject, the courts and commentators greatly differ. There is respectable authority listed in favor of the precepts of Deuteronomy, *Honora patrem tuum et matrem*, embodied in the Civil Code as including also the grandfather and the grandmother.

They construe, under the articles of the Code, that the obligation involved in the case at bar, legal in so far as relates to the father and mother, is legal also in so far as relates to the grandfather and the grandmother, and that the court can intervene for its enforcement without regard to the will of the father or mother.

Other courts hold and other commentators emphatically state that, under the law of nature, the child is under the authority of the father or mother, after the death of either.

We translate from Laurent, Vol. 4, p. 362, who propounds the question:

Can the ascendant demand that the authority of the father and mother be limited?

In truth, the ascendants have certain rights that the law, in accord with nature, gives them, but only when the father and mother are dead or are incapable of manifesting their will; during the existence of the father and mother the law, properly, accords them no authority over the children.

To permit them to intervene would occasion embarrassment and annoyance; even more; it would injuriously hinder proper paternal authority by dividing it.

The authority sought is said to be in the interest of the children.

Are the children interested in anything in the nature of a conflict of authority? Without doubt it is desirable that the ties of affection that nature creates between the ascendants and their grandchildren be strengthened and not unceasing, but, if there is a conflict, the father alone or the mother should be the judge.

The law gives no right of action to the grandparents.

The father may have good reasons to avoid all contact between his children and their grandparents, either that he fears that they may inculcate bad principles or that they will unsettle the respect and affection due him.

He owes no account to any one of his motives; they may be so intimate that the honor of the family requires that they shall remain a secret.

Shall we say that the judge shall be the arbitrator between the grandparent and the father?

The court of Bordeaux replies that the intervention of the tribunals would, as a consequence, render the discussions of the family more pronounced by delivering them to the public.

Other views than those above expressed, says the commentator would be proper on the part of the legislator—we do not understand them when emanating from interpreters of the present laws.

We refer approvingly to the French authorities only in so far as they lay down the principles that there is not a *vinculum juris*. That the obligation ordinarily to visit grandparents is moral and not legal.

There may be cases of downright wrong and inhumanity demanding judicial intervention, even to the extent of dismissing the father and tutor from his trust.

The case at bar does not disclose so grave an issue.

Ill feeling and bad blood separate the father and grandmother.

The former admits the respect due to the latter by his children.

The ties of nature will prove more efficacious in restoring kindly family relations than the coercive measures which must follow judicial intervention.

It is, therefore, ordered, adjudged and decreed that the judgment of the court *a qua* be annulled and avoided, and that the rule be dismissed at plaintiff's costs in both courts.

Rehearing refused.