RUSSELL A. BROTHERTON, SR., *et al.*

*v.*

ROGER HOUSTON BOOTHE

(No. 13925)

Decided June 27, 1978.

*Larry L. Skeen* for appellants.

*J. Stephen Max* for appellee.

CAPLAN, CHIEF JUSTICE:

Russell A. Brotherton, Sr. and Jeanne Louise Brotherton, his wife, filed a petition in the Circuit Court of Wyoming County wherein they sought visitation rights

with their granddaughter. Upon the granting of respondent's motion to dismiss on the ground that the petition failed to state a claim upon which relief could be granted, this appeal was prosecuted.

The sole issue presented on this appeal is whether the grandparents have any legal right to visitation with their grandchild which will be enforced by a court over the objection of the parent of the child. We are of the opinion that no such legal right exists and we affirm the judgment of the trial court.

The respondent, Roger Houston Boothe, was married to Barbara Jeanne Boothe, the daughter of the petitioners, and in 1970 a child was born of that marriage. Having been afflicted with multiple sclerosis, Barbara was no longer able to take care of her child and approximately six months after her birth the child went to live with her grandparents. The child's mother continued to live with her husband until 1973 when her health further deteriorated. She then also moved in with her parents where she stayed until her death on December 8, 1974. The respondent lived separate and apart from his wife and child during the period that his wife resided with her parents.

Shortly after the death of his wife, Roger Houston Boothe demanded the custody of his daughter. When the Brothertons refused to relinquish custody, he filed a petition for a writ of habeas corpus in this Court. Upon being granted the writ, and after a contempt proceeding had been instituted, the grandparents returned the child to the father. The grandparents alleged in their petition that except for "a few rare occasions" they were unable to visit with their granddaughter; also that they were informed after the last visit that they would not be allowed to see or visit with their granddaughter again. They did not allege that the father was in any manner unfit, but did express their belief that the requested visitation privileges were in the best interests of their granddaughter.

This case presents an unfortunate and sad situation. Under normal family relationships, close association between grandparents and grandchildren is welcomed and ever encouraged. However, the circumstances with which we are confronted here do not present such a normal family situation. Where a parent objects to the visitation sought here we must consider the legal rights of such parent.

A natural parent, having custody of his or her minor child, which includes control of such child, has the right to determine with whom the child may visit and a court which, over the objection of the parent, decrees visitation rights to a nonparent, including a grandparent, exceeds its authority. This, of course, is premised on the proposition that the parent has not abandoned the child or forfeited his parental rights in any manner recognized by law. While the foregoing principle has not been directly decided in this jurisdiction, it overwhelmingly reflects the majority view in this country.

In *Shriver v. Shriver*, 7 Ohio App.2d 169, 219 N.E.2d 300 (1966), the court noted that the divorced mother, having been granted custody and control of her minor child, "has the right to determine when such minor child may visit, or may be visited by the paternal grandparents of the child, and that a court exceeds its authority in decreeing visitation rights to such grandparents where such rights have not been agreed to by the mother ... If this were not so extra-parental visitation rights would be sought in almost every divorce case and it is unlikely that the rights sought would be confined solely to grandparents." The *Shriver* court, commenting on *Kay v. Kay*, 51 Ohio Ops. 434, 65 Ohio Law Abs. 472, 112 N.E.2d 562 (1953), relied upon here by the Brothertons, noted that the determination that visitation rights might be awarded to grandparents was *"obiter dictum."*

The majority view is further reflected in *Jackson v. Fitzgerald*, 185 A.2d 724, 98 A.L.R. 2d 322 (1962), wherein a District of Columbia Municipal Court of Appeals denied the grandparent visitation rights with her grand-

daughter. The court held the right of visitation derives from the right to custody and a grandparent who has no right to custody of a child upon the death of her mother is not entitled to an award of visitation rights. See *Odell v. Lutz*, 78 Cal. App.2d 104, 177 P.2d 628 (1947); *Succession of Reiss*, 46 La. Ann. 347, 15 So. 151 (1894); *Noll v. Noll*, 277 App. Div. 286, 98 N.Y.S. 2d 938 (1950); *People ex. rel. Schachter v. Kahn*, 241 App. Div. 686, 269 N.Y.S. 173 (1934); *Commonwealth ex. rel. McDonald v. Smith*, 170 Pa. Super. 254, 85 A.2d 686 (1952); and *Smith v. Painter*, 408 S.W.2d 785 (Tex. 1966).

The appellant's reliance upon the decision of this Court in *J.M.S. v. H.A.*, (decided April 4, 1978) is misplaced. That case is readily distinguishable from the case at bar in that there visitation rights of a parent were involved. A parent, even though he or she is denied custody, does not thereby lose his or her natural right to visit and be visited by his or her children. 59 Am. Jur. 2d, *Parent and Child*, § 45. Grandparents do not stand in *loco parentis* to grandchildren. *Sutton v. Menges*, 186 Va. 805, 44 S.E.2d 414 (1947).

It is argued by the appellants that the circumstances of this case cast a moral duty on the father to permit visitation by the grandparents and that the courts should act to compel such visitation rights. As succinctly noted in 59 Am. Jur. 2d, *Parent and Child*, § 92, "Any moral duty there may be upon a parent to send his children to visit their grandparents is not a proper subject of judicial enforcement. And a grandparent has no legal right to visit and communicate with his grandchild if the parent forbids it."

A parent who properly performs his parental duties has the right to determine with whom his child will associate. Accordingly, "the courts will not undertake to give visitation rights to a non-parent—a grandparent, for example—over the parents' objection." 59 Am. Jur. 2d, *Parent and Child*, § 45. In fact, it has been held that this parental right is "an inseparable and inalienable ingredient of the parent's right to custody and control of

a minor child and the court has no authority to interfere unless it first appears that the parent has forfeited his rights in a manner recognized by law." 59 Am. Jur. 2d, *Parent and Child,* § 17. *Davis v. Davis,* 212 Ga. 217, 91 S.E.2d 487 (1956).

Being of the opinion that the law does not permit a court to decree such visitation rights to grandparents over the objection of a parent who is properly performing his parental duties, the judgment of the Circuit Court of Wyoming County is affirmed.

*Affirmed.*

MCGRAW, JUSTICE, *dissenting:*

I dissent for the reason that I believe equity should grant the grandparents some specific visitation.