359 S.E.2d 587

**In re the Petition of Sharon K. NEARHOOF to Adopt David Andrew Nearhoof.**

**No. CC962.**

Supreme Court of Appeals of West Virginia.

July 17, 1987.

---

Andrew S. Nason, Pepper & Nason, Charleston, for appellant.

J. Stephen Max, Charleston, for appellee.

McHUGH, Justice:

This action is before this Court upon a certified question from the Circuit Court of Kanawha County. This action concerns whether the adoption statute, *W. Va. Code*, 48–4–1, *et seq.*, as amended, precludes granting grandparents' visitation rights when the mother of a child is deceased and the natural father's second wife seeks to adopt the child. This Court has before it the petition for appeal, all matters of record and briefs and argument of counsel.

The appellant in this case is Sharon K. Nearhoof, the second wife of the child's natural father. She is seeking to legally adopt her husband's child from a previous marriage.

The appellee, Mrs. John Richardson, the child's maternal grandmother, is seeking to enforce her right to reasonable visitation with her grandson pursuant to *W. Va. Code*, 48–2B–1 [1980].

I

The appellant's husband, David Lee Nearhoof, had been previously married to the appellee's daughter, Roberta Terry-Ann Richardson Nearhoof. A child, David Andrew Nearhoof, was born of that marriage. The marriage between David and Roberta Terry-Ann Nearhoof ended in divorce. Approximately two years later, Roberta Terry-Ann Nearhoof died.

Shortly after her daughter's death, the appellee and her husband[1] sought visitation rights with their grandson under the authority of *W. Va. Code*, 48–2B–1 [1980]. Accordingly, the Richardsons were awarded visitation privileges with their grandson by order of the Circuit Court of Kanawha County.

Thereafter, the appellant and David Lee Nearhoof were married. Subsequently, the appellant petitioned to adopt David Andrew

---

1. The husband of the appellee is now deceased.

Nearhoof, her husband's son by his previous marriage.

The appellee and her husband, upon receiving notice of the appellant's petition to adopt, sought to protect their visitation privileges with their grandson.

The grandparents indicated to the court that if the adoption would not terminate their rights of visitation, they had no objection to the Court granting an adoption. The court held that the adoption would not sever the visitation rights of the grandparents and certified the following question to this Court:

> Whether a grandparent who has obtained rights to visit with their grandchild under West Virginia Code, § 48–2–15,[2] upon the death of their child, the parent of the child sought to be adopted, still maintains and enjoys a right to visit with their grandchild if that grandchild is adopted out of the grandparent's family pursuant to an Order issued by a Circuit Court of this Court pursuant to West Virginia Code, § 48–4–1 et seq.?

## II

This case involves the interpretation of the adoption statute, *W.Va.Code*, 48–4–1, *et seq.*, as amended, as it relates to the statutory provisions providing for grandparent visitation, *W.Va.Code*, 48–2B–1 [1980] and *W.Va.Code*, 48–2–15(b)(1) [1986]. The text of *W.Va.Code*, 48–2–15(b)(1) [1986] provides:

> (b) Upon ordering the annulment of a marriage or a divorce or granting of decree of separate maintenance, the court may further order all or any part of the following relief:
>
> (1) ... [T]he court may, in its discretion, make such further order as it shall deem expedient, concerning the grant of reasonable visitation rights to any grandparent or grandparents of the minor children upon application, if the grandparent

or grandparents are related to such minor child through a party:

> (A) Whose whereabouts are unknown, or
>
> (B) Who did not answer or otherwise appear and defend the cause of action.

Based upon the facts in the case now before us, it is necessary to reconcile the policies and provisions embodied in these statutes.

The pertinent statutory provision providing for grandparent's visitation upon the death of a grandparent's child is found in *W.Va.Code*, 48–2B–1 [1980] and reads as follows:

> Upon the verified petition by a parent of a deceased child seeking visitation rights with grandchildren of the petitioner, the court may order that the grandparent shall have such reasonable and seasonable visitation rights with said grandchild or grandchildren as the court may deem proper and in the best interest of the child or children.

In matters involving child visitation, a court's paramount consideration is always the welfare of the child involved. Syl. pt. 1, *Ledsome v. Ledsome*, 171 W.Va. 602, 301 S.E.2d 475 (1983); *see also Dempsey v. Dempsey*, 172 W.Va. 419, 421, 306 S.E.2d 230, 232 (1983). Accordingly, a trial court, in considering a petition of a grandparent for visitation rights with his or her grandchild pursuant to *W.Va.Code*, 48–2–15(b)(1) [1986] or *W.Va.Code*, 48–2B–1 [1980], shall give paramount consideration to the best interests of the child or children involved. *See Blake v. Blake*, 172 W.Va. 690, 692, 310 S.E.2d 207, 210 (1983); *see also* annotation, *Grandparents' Visitation Rights*, 90 A.L.R.3d 222, § 3 (1979) and cases cited therein.

Previously in West Virginia, grandparents possessed no legal right to custody or visitation of a grandchild over the parent's objection.[3] Syl. pt. 1, *Brotherton v.*

---

2. The statutory provision providing for grandparent visitation upon the petition by a parent of a deceased child seeking visitation rights with his or her grandchildren is *W.Va.Code*, 48–2B–1 [1980].

3. In the absence of statutes, courts have been virtually unanimous in denying a grandparent visitation privileges with grandchildren when the custodial parent objects. *Mimkon v. Ford*, 66 N.J. 426, 430, 332 A.2d 199, 201 (1975) (collecting cases at 66 N.J. at 430, 332 A.2d at 201).

*Boothe,* 161 W.Va. 691, 250 S.E.2d 36 (1978); *Jeffries v. Jeffries,* 162 W.Va. 905, 907, 253 S.E.2d 689, 691 (1979). As noted above, however, *W.Va.Code,* 48–2B–1 [1980] provides for such rights when a parent, who is a child of the petitioning grandparent, is deceased, and *W.Va.Code,* 48–2–15(b)(1) [1986] permits such visitation when the whereabouts of the parent who is a party to a divorce action are unknown, or he or she has failed to answer or defend the divorce action.

*W.Va.Code,* 48–2B–1 [1980], providing for grandparents' visitation upon the petition by a parent of a deceased child with his or her grandchild or grandchildren, changes the common law rule in West Virginia as to the right of grandparents' visitation. This statute creates an independent action in the grandparent. Obviously, the right to visitation if and when asserted by the petitioning grandparent is in no way dependent upon his or her continued relationship to the grandchild through the grandchild's parent who is deceased. In the case before us, if David Lee Nearhoof had remarried without subsequent adoption of the child by the appellant, the visitation originally awarded to the appellee would likely continue, assuming, of course, that the trial court concluded that such visitation was in the child's best interests. Clearly, in that scenario the provisions established in *W.Va.Code,* 48–2B–1 [1980] would be applicable and continued visitation rights of the appellee would be enforced.

Would the adoption of David Andrew by the appellant change that result? We must attempt to reconcile what appear to be conflicting policies embodied in the adoption statute, *W.Va.Code,* 48–4–1, *et seq.,* as amended, with those in *W.Va.Code,* 48–2B–1 [1980] and *W.Va.Code,* 48–2–15(b)(1) [1986], the grandparents' visitation statutes. The appellant bases her assertion that her adoption of the child would sever his grandmother's rights of visitation on *W.Va.Code,* 48–4–11(a) [1984], which reads in pertinent part:

Upon the entry of such order of adoption, any person previously entitled to parental rights, any parent or parents by any previous legal adoption, and the lineal or collateral kindred of any such person, parent or parents, ... shall be divested of all legal rights, ... and shall be divested of all obligations in respect to the said adopted child,.... From and after the entry of such order of adoption, the adopted child shall be, to all intents and for all purposes, the legitimate issue of the person or persons so adopting him or her and shall be entitled to all the rights and privileges and subject to all the obligations of a natural child of such adopting parent or parents.

In *Mimkon v. Ford,* 66 N.J. 426, 332 A.2d 199 (1975), the Supreme Court of New Jersey faced a similar dilemma. In *Mimkon,* a maternal grandparent brought an action to obtain visitation rights of her five and one-half year-old granddaughter, who had been adopted following the death of her natural mother. The court concluded that the child's adoption by the stepmother did not preclude the grandmother from obtaining visitation rights with her granddaughter.

The visitation statute provided, in essence, that where a minor child's parent has died, a grandparent of such child, who is the parent of the deceased parent, may be awarded visitation rights if a trial judge determined that such visitation would be in the child's best interests. N.J.Stat.Ann. § 9:2–7.1 (West 1976). On the other hand, the adoption statute provided that an adoption shall terminate all relationships between the child and his parents and shall terminate all rights and duties which are founded upon such relationships except, for example, when the adoption is by a stepmother and consummated with the consent of the father, such adoption shall not affect the relationship between the child and father. N.J.Stat.Ann. § 9:3–30A (West 1976).[4]

The court rejected the father's argument that the adoption statute precluded the

---

**4.** N.J.Stat.Ann. 9:3–30A (West 1976) was subsequently repealed by the New Jersey legislature in 1977. *See* note under N.J.Stat.Ann. § 9:3–37 (West Supp.1987).

award of grandparent visitation pursuant to the visitation statute and concluded that the legislature did not intend to permit the statutorily granted right of grandparent visitation to be frustrated by the adoption statute. 66 N.J. at 436, 332 A.2d at 204. Importantly, the court in *Mimkon* recognized that ordinarily grandparents occupy a role in a child's life that is quite distinct from a parent's. 66 N.J. at 435–36, 332 A.2d at 204. Grandparents, the court noted, are not generally authority figures and do not possessively exert exclusive rights to make parental decisions. It, therefore, reasoned that grandparent visitation involves a much lesser risk of threat to the development of a healthy and natural relationship between a child and her adopting parent than might continued contact by the natural parent. The court ultimately concluded that visitation in the context of this case did not clash with policies embodied in the New Jersey adoption statute.

Similarly, in *Graziano v. Davis*, 50 Ohio App.2d 83, 361 N.E.2d 525 (1976), the Ohio Court of Appeals affirmed a trial judge's decree which had awarded visitation rights to the paternal grandparents of two children who, following the death of their father, were adopted by their mother's second husband. In *Graziano*, the court concluded that where there is an adoption, the provisions of a state adoption statute and of a visitation statute should be applied on a case-by-case basis, thereby giving the trial judge the authority, in his or her discretion, to grant or withhold visitation rights based upon what is in the best interests of the children. 50 Ohio App.2d at 90, 361 N.E.2d at 530.

After a careful consideration of the facts in *Graziano*, the trial judge determined that the love and affection the grandparents had for the grandchildren, as well as the close relationship that they had shared in the past, demonstrated that the children's best interests would be served by resuming the visits and possibly reestablishing that relationship. The appellate court noted that although the legislative intent with regard to the relationship between the adoption and visitation statutes was unclear, the best interests of the child should be the controlling factor. The court stated that to proclaim a "judicial fiat" that adoptions should forever preclude grandparent visitation, would be too strict and arbitrary a rule which could ultimately work against the best interests of a child. 50 Ohio App.2d at 90, 361 N.E.2d at 530.

More recently in *Chavis v. Witt*, 285 S.C. 77, 328 S.E.2d 74 (1985), the Supreme Court of South Carolina ruled that the state adoption statute did not preclude the granting of visitation rights to grandparents when their son or daughter, the grandchild's parent, is deceased. In concluding that the court's paramount consideration should be the best interests of the child, the court held that when a parent dies, the relationship of the grandparents to the child of the deceased person is not obliterated. 285 S.C. at 79, 328 S.E.2d at 75. *See also Roquemore v. Roquemore*, 275 Cal.App.2d 912, 80 Cal.Rptr. 432 (1969); *People ex rel. Sibley v. Sheppard*, 54 N.Y.2d 320, 429 N.E.2d 1049, 445 N.Y.S.2d 420 (1981).[5]

Accordingly, we similarly conclude that the policies embodied in *W.Va.Code*, 48–4–1, *et seq.*, as amended, and in *W.Va. Code*, 48–2B–1 [1980] and *W.Va.Code*, 48–2–15(b)(1) [1986] are not conflicting. The objective of both statutes is to provide substitute parental relationships for children who have been deprived of the benefits of a healthy relationship with one or both natural parents. *Mimkon v. Ford*, 66 N.J. 426, 433, 332 A.2d 199, 202 (1975). It is clear that the legislature intended to vest in the trial court exclusive discretionary authority to grant grandparents' visitation rights pursuant to *W.Va.Code*, 48–2B–1 and 48–2–

---

5. The majority rule for courts is that stepparent adoptions terminate visitation rights of natural grandparents. Ingulli, *Grandparent Visitation Rights: Social Policies and Legal Rights*, 87 W.Va.L.Rev. 295, 314–15 (1985), collecting cases at note 115. However, many of the leading cases in this area have been superseded by subsequent legislation. *See* Ingulli, *supra* note 120, at 315. The majority of legislatures which have expressly dealt with the issue of grandparent visitation have mandated that visitation rights survive adoption by a stepparent. *See* Ingulli, *supra* note 119, at 315.

15(b)(1), as amended. *See Chavis v. Witt,* 285 S.C. 77, 328 S.E.2d 74 (1985). Furthermore, had the legislature intended the adoption statute to limit the statute providing for grandparents' visitation, the statutes could have reflected that intention. *See People ex rel. Sibley v. Sheppard,* 54 N.Y.2d 320, 325, 429 N.E.2d 1049, 1051, 445 N.Y.S.2d 420, 422 (1981).

Importantly, in *W.Va.Code,* 48–2B–1 [1980], the legislature provided that the controlling element in the matter of grandparent visitation is the best interests of the child or children involved. In light of such statutory language, we are of the opinion that the availability of the grandparent visitation mechanism is not limited to the nonadoptive custodial setting. We do not believe that the legislature intended to permit the statutorily granted right of grandparent visitation to be frustrated by the otherwise beneficient provisions of the adoption statute.

As we have stressed above, this Court's ultimate concern is always for the welfare of the child. This principle was recognized by the Supreme Court of New Jersey in *Mimkon v. Ford,* 66 N.J. 426, 332 A.2d 199 (1975) when Justice Pashman eloquently stated:

It is biological fact that grandparents are bound to their grandchildren by the unbreakable links of heredity. It is common human experience that the concern and interest grandparents take in the welfare of their grandchildren far exceeds anything explicable in purely biological terms. A very special relationship often arises and continues between grandparents and grandchildren. The tensions and conflicts which commonly mar relations between parents and children are often absent between those very same parents and their grandchildren. Visits with a grandparent are often a precious part of a child's experience and there are benefits which devolve upon the grandchild from the relationship with his grandparents which he cannot derive from any other relationship. Neither the Legislature nor this Court is blind to human truths which grandparents and grandchildren have always known.

66 N.J. at 437, 332 A.2d at 204–05.

The legislature has determined that under certain limited circumstances, grandparents should have continuing contacts with their grandchild's development, provided such contact is in the child's best interests. In so doing, the legislature undoubtedly recognized that a child suffers great emotional stress when one or both of the parents have died. By enacting *W.Va. Code,* 48–2B–1 [1980], the legislature has further recognized that the child should not undergo the additional burden of being prohibited from seeing his grandparent or grandparents, who may provide the needed warmth, love, and support that may alleviate the child's suffering. *See People ex rel. Sibley v. Sheppard,* 54 N.Y.2d at 327, 429 N.E.2d at 1052, 445 N.Y.S.2d at 423; *see also Mimkon v. Ford,* 66 N.J. at 437, 332 A.2d at 205.

Accordingly, we conclude that upon the petition of a grandparent, pursuant to *W.Va.Code,* 48–2B–1 [1980], seeking visitation rights with a grandchild or grandchildren, who is the child or are the children of the grandparent's deceased child, a trial court may order that the grandparent shall have reasonable and seasonable visitation rights with the grandchild or grandchildren provided such visitation is in the best interest of the child or children involved, even though the grandchild or grandchildren has or have been adopted by the spouse of the deceased child's former spouse.

For the foregoing reasons, we answer the certified question in the affirmative and remand this action to the Circuit Court of Kanawha County for further proceedings consistent with this opinion.

Having answered the certified question, this case is dismissed from the docket of this Court.

Certified question answered.