482 S.E.2d 675

**MARY JEAN H., Petitioner Below, Appellant,**

v.

**PAMELA KAY R., Respondent Below, Appellee.**

**No. 23324.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 11, 1996.

Decided Dec. 17, 1996.

---

Gary L. Rymer, Middlebourne, for Appellant.

Pamela Kay R., Pro Se.

## PER CURIAM:

This is an appeal[1] by Mary Jean H. (hereinafter "the Appellant") from a February 28; 1995, order of the Circuit Court of Ohio County which failed to grant the Appellant visitation privileges to her granddaughter, Ashley R. The Appellant asserts that West

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996, and continuing until further order of this Court.

Virginia Code § 48–2B–5 (1995) mandates such visitation and that the lower court erred in failing to provide visitation to the Appellant. We remand this matter to the lower court for the presentation of evidence on the issue of the Appellant's rights to visitation.

## I.

Ashley R. was born on December 9, 1991. Ashley's mother, Appellee Pamela R., resided with her mother, the Appellant, at the time of Ashley's birth. Although the Appellee continued to reside with the Appellant for only approximately five months after Ashley's birth, Ashley remained in the care and custody of the Appellant from her birth until July 1994. The struggle for custody of this child began in April 1992 when the Appellant grandmother filed a petition for custody alleging that the Appellee mother of the child was unable to care for the various health problems suffered by the child. The lower court initially granted temporary custody to the Appellant grandmother with the caveat that the Appellee would reassume full custody upon completion of training in the skills necessary to successfully deal with the child's medical problems.

Subsequent to the temporary placement of the child with her grandmother in April 1992, the Appellee mother began parenting classes at the Florence Crittendon Center in Wheeling, West Virginia. The record then reflects several incidents of conflict and dispute between the Appellant and the Appellee. In a July 20, 1993, letter to the lower court, for example, the Florence Crittendon Center reported harassment by the Appellant toward the Appellee and recommended that custody be returned to the mother as soon as possible. The lower court was also provided with evidence of a health department investigation of the condition of the Appellant's home. The report indicated that ducks were permitted to live in the home and that there was animal excrement in the home. The Appellant was apparently ordered to remove garbage from the yard and to remove a pile of dog feces from under the porch.

By order dated July 1, 1994, the Appellee mother regained full custody of Ashley, and no visitation was provided to the Appellant grandmother. On July 19, 1994, the Appellant filed a petition for visitation pursuant to the Grandparent Visitation Act, West Virginia Code § 48–2B–5. A hearing on the Appellant's petition was held on August 19, 1994, but no ruling was made on the petition by January 1995. By order dated February 10, 1995, the lower court enumerated a visitation schedule agreed upon by the parties consisting of visitation with the Appellant on the first Saturday of each month for twenty-four hours and two Wednesday evenings each month.[2] In its February 10, 1995, order, the court also stated that it would "take the arguments of counsel under advisement concerning the permanence of said visitation order as well as delineation of any procedures to dissolve the same . . . ." On February 28, 1995, the lower court entered another order terminating the visitation schedule previously agreed upon, noting that the Appellee and her husband were moving to South Carolina with Ashley, and failed to grant any visitation rights to the Appellant.

## II.

The Grandparent Visitation Act, West Virginia Code § 48–2B–5 provides, in pertinent part, as follows:

(a) Notwithstanding any provision of this code to the contrary, a grandparent may petition the circuit court of the county in which he or she resides for an order granting said grandparent reasonable visitation rights where:

(1) Said minor grandchild has resided without significant interruption with the grandparent with the parents residing elsewhere for a period of six consecutive months or more within the past two years;

(2) The minor grandchild is subsequently removed from the home by a parent or parents; and

(3) The removing parent or parents have refused to allow the petitioning

---

**2.** The Appellant emphasizes that she agreed to this limited visitation schedule only because the lower court judge was planning to retire and she was uncertain of the expected date of an order of the lower court.

grandparent visitation with the minor child who formerly resided in the grandparent's home.

(b) If the circuit court determines that the requirements set forth in subsection (a) of this section have been shown, it shall grant such reasonable visitation rights to the petitioning grandparent as may be consistent with the minor child's best interests.

We had occasion to review the Grandparent Visitation Act in *Petition of Nearhoof,* 178 W.Va. 359, 359 S.E.2d 587 (1987). In syllabus point one of that opinion, we explained that "[a] trial court, in considering a petition of a grandparent for visitation rights with a grandchild or grandchildren pursuant to *W.Va.Code,* 48–2–15(b)(1) [1986] or *W.Va.Code,* 48–2B–1 [1980], shall give paramount consideration to the best interests of the grandchild or grandchildren involved." *See also* Elaine D. Ingulli, "Grandparent Visitation Rights: Social Policies and Legal Rights," 87 W.Va.L.Rev. 295 (1984–85). This recognition is founded upon the general guiding principle that "[a] court, in defining a parent's right to visitation, is charged with giving paramount consideration to the welfare of the child involved." Syl. Pt. 1, *Ledsome v. Ledsome,* 171 W.Va. 602, 301 S.E.2d 475 (1983). *See Blake v. Blake,* 172 W.Va. 690, 692, 310 S.E.2d 207, 210 (1983).

Thus, while the statute affords certain protections to the grandparent, it is in no measure a guarantee of the right to visitation. The best interests of the child must be given greatest priority, and the rights of the child are superior to those of the grandparent seeking visitation. In a case of this nature, the lower court must make a specific determination that the requirements of subsection (a) of the statute have been met, i.e., whether the grandparent even meets the criteria necessary to invoke the protections of the statute.[3] Next, the lower court must proceed to an examination of whether visitation would be in the best interests of the child.

In the present case, the analysis concerning the best interests of the child would necessarily include an evaluation of the health department investigation into the condition of the Appellant's home and would also require consideration of the logistical problems that must be overcome due to the geographical distance between the parties. Consideration must be given to the distance to be traveled if visitation is ordered, the frequency of visitation where the parties do not live in close proximity, the allocation of cost of transportation, and the activities of the child in her home community which might be affected. Furthermore, the lower court in a case such as this should evaluate the nature of the relationship which may exist between the child and the grandparent. As we recognized in *Honaker v. Burnside,* 182 W.Va. 448, 452, 388 S.E.2d 322, 326 (1989), stability in a child's life is a major concern. This continuity is especially important if a grandparent or other relative has been the care giver. "Taking away continued contact with ... important figures in ... [a child's] life would be detrimental to her stability and well-being...." *Id. See also Kenneth L.W. v. Tamyra S.W.,* 185 W.Va. 675, 408 S.E.2d 625 (1991). These issues were not adequately addressed by the lower court, and we must remand for completion of this task.

Therefore, we remand this matter to the lower court for an evaluation and determination consistent with this opinion.

Reversed and Remanded with Directions.

RECHT, Judge, sitting by temporary assignment.

---

**3.** In the present case, this point was allegedly conceded by the Appellee mother during the August 1994 hearing on the Appellant's petition for custody. However, the court made no specific finding on this issue.