617 S.E.2d 866

**In re Grandparent VISITATION OF CATHY L. (R.) M., Petitioner Below, Appellee,**

v.

**MARK BRENT R. and Carla Ann R., Respondents Below, Appellants**

No. 31864.

Supreme Court of Appeals of West Virginia.

Submitted March 23, 2005.

Decided May 11, 2005.

Concurring Opinion of Justice Davis July 8, 2005.

Charles G. Johnson, Jackson & Kelly, Clarksburg, for the Appellee.

Thomas W. Kupec, Michael & Kupec, Clarksburg, for the Appellants.

D. Andrew McMunn, Waters, Warner & Harris, P.L.L.C., Clarksburg, Guardian ad Litem.

PER CURIAM:

This is an appeal by Mark and Carla R.[1] (hereinafter "Appellants") from an order of the Circuit Court of Harrison County granting grandparent visitation rights to Cathy R.M. (hereinafter "Appellee") and her husband, Robert M. The lower court held that grandparent visitation would not substantially interfere with the parent-child relationship and would serve the best interests of the child, Cassidy R. The Appellants, as the adoptive parents of Cassidy R., appeal the lower court's decision, contending that grandparent visitation was erroneously granted and that the best interests of Cassidy R. are not served by visitation with Cassidy's biological grandmother, Appellee Cathy R.M. Upon thorough review of the record, briefs, arguments of counsel, and applicable precedent, this Court reverses the decision of the lower court and remands this matter for entry of an order denying grandparent visitation rights to the Appellee and her husband.

I. Factual and Procedural History

Cassidy R. was born on February 13, 1999, to biological parents Jasper R. and Shanna R. Cassidy's biological father, Jasper R., is the Appellee's son. The record reflects that the Appellee frequently visited with Cassidy during the first two and one-half years of Cassidy's life, and Cassidy resided with the Appellee during many weekends and holidays during that period of time. In September 2001, Jasper R. and Shanna R., as biological parents, consented to the adoption of Cassidy by the Appellants. Appellant Mark R. is the biological uncle of Jasper R. and the biological great-uncle of Cassidy.[2] The decree of adoption was entered by the Circuit Court of Harrison County on May 23, 2002. While the adoption was pending, the Appellants apparently determined that it was not in Cassidy's best interests to continue a relationship with the Appellee. Thus, the Appellants did not permit the Appellee to have any contact with Cassidy after April 2002.

In April 2003, the Appellee filed a petition with the Family Court of Harrison County seeking grandparent visitation based upon her biological relationship to Cassidy, the fact that she had been a significant care giver to Cassidy prior to the adoption proceedings, and the assertion that it would be in Cassidy's best interests to restore a relationship with the Appellee. Guardian ad litem Ashley A. Lawson was appointed on October 21, 2003, and she submitted her report on December 4, 2003. In that report, Ms. Lawson recommended that the Appellants, as adoptive parents, should "have the sole determination of who [the adopted child] may spend time with...." Ms. Lawson recommended that grandparent visitation rights be denied.

On January 20, 2004, the Family Court Judge entered an order granting grandparent visitation rights to the Appellee. The Appellants appealed this ruling to the lower court, and that appeal was denied without hearing on February 17, 2004.[3] They now appeal to this Court, contending that the family court erred in finding that visitation

---

1. As in all sensitive matters involving the rights of children, we use only initials in reference to the last names of the individuals involved. *See In the Matter of Scottie D.,* 185 W.Va. 191, 406 S.E.2d 214 (1991).

2. Jasper R.'s father, Bob R., is Mark R.'s brother. Appellee Cathy R.M. (Jasper's mother) is no longer married to Bob R. and is now married to Robert M.

3. Guardian ad litem Ashley Lawson relocated her legal practice to the state of Kentucky, and Guardian ad litem D. Andrew McMunn was thereafter appointed. Mr. McMunn has filed a brief with this Court, asserting one assignment of error. Mr. McMunn asserts that the family court abused its discretion "by awarding grandparent visitation to Appellee when, pursuant to the factors set forth in W. Va.Code § 48–10–502, the visitation was not in the best interests of [Cassidy]."

was in the best interests of Cassidy; that the family court unjustly interfered with the rights of the adoptive parents in ordering visitation over their objection; that the family court failed to apply the presumption that visitation privileges need not be granted; that the family court abused its discretion by failing to follow the guardian ad litem's recommendations; and that the Appellee failed to justify grandparent visitation.

## II. Standard of Review

This Court's review of the issues presented is *de novo*. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

## III. Discussion

At common law, "grandparents possessed no legal right to custody or visitation of a grandchild over the parent's objection. Syl. pt. 1, *Brotherton v. Boothe*, 161 W.Va. 691, 250 S.E.2d 36 (1978); *Jeffries v. Jeffries*, 162 W.Va. 905, 907, 253 S.E.2d 689, 691 (1979)." *Petition of Nearhoof*, 178 W.Va. 359, 361–62, 359 S.E.2d 587, 589–90 (1987) (footnote omitted). In 1980, the West Virginia Legislature enacted West Virginia Code § 48–2B–1 (1980) (Repl. Vol. 1992), the precursor to the statute which provides guidance in the present case. The 1980 grandparent visitation statute provided for grandparent visitation with the child of a deceased child of such grandparent. The *Nearhoof* Court recognized that this statute "change[d] the common law rule in West Virginia as to the right of grandparents' visitation." 178 W.Va. at 362, 359 S.E.2d at 590.

This Court explained as follows in syllabus point one of *Nearhoof*: "A trial court, in considering a petition of a grandparent for visitation rights with a grandchild or grandchildren pursuant to *W.Va.Code*, 48–2–15(b)(1) [1986] or *W.Va.Code*, 48–2B–1 [1980], shall give paramount consideration to the best interests of the grandchild or grandchildren involved." This requirement has been sustained through all subsequent alterations to the grandparent visitation statute and is predicated upon the guiding principle that "[a] court, in defining a parent's right to

visitation, is charged with giving paramount consideration to the welfare of the child involved." Syl. Pt. 1, *Ledsome v. Ledsome*, 171 W.Va. 602, 301 S.E.2d 475 (1983).

In *Nearhoof*, this Court encountered the issue of whether the grandparent visitation act, as written at that time, conflicted with the adoption statutes. The *Nearhoof* Court found that the principles expressed in the adoption and visitation statutes were not at variance with one another and, in so holding, observed that "had the legislature intended the adoption statute to limit the statute providing for grandparents' visitation, the statutes could have reflected that intention." 178 W.Va. at 364, 359 S.E.2d at 592 (citation omitted).

In addressing the parameters of the statutory authority granted by the grandparent visitation statute in *Elmer Jimmy S. v. Kenneth B.*, 199 W.Va. 263, 483 S.E.2d 846 (1997), this Court found that despite the Legislature's failure to include any reference to a situation in which a grandparent seeks visitation rights subsequent to the termination of parental rights, the statute afforded circuit courts jurisdiction to consider such grandparent visitation requests. This Court stated:

> While W. Va.Code § 48–2B–1 *et seq.* is designated as the exclusive provision for grandparent visitation, it is silent with regard to grandparent visitation when the parental rights of the grandparent's child (the parent of the grandchild) have been terminated. In addition, we are not aware of any statute expressly prohibiting grandparent visitation under such circumstances. Thus, following the Court's reasoning in *Nearhoof*, we believe that had the legislature intended the termination of parental rights to affect the visitation rights of the corresponding grandparent, the statute could have reflected that intention.

199 W.Va. at 266–67, 483 S.E.2d at 849–50 (citation omitted).

This Court again emphasized the best interests analysis in *Mary Jean H. v. Pamela Kay R.*, 198 W.Va. 690, 482 S.E.2d 675 (1996). This Court explained that "while the statute affords certain protections to the grandparent, it is in no measure a guarantee of the right to visitation." 198 W.Va. at 693,

482 S.E.2d at 678. "The best interests of the child must be given greatest priority, and the rights of the child are superior to those of the grandparent seeking visitation." *Id.* at 693, 482 S.E.2d at 678.

The grandparent visitation act was substantially enhanced in 2001, and it is that most recent version of the statute that applies in the present case. The best interests of the child issue is addressed in West Virginia Code § 48–10–101 (2001) (Repl. Vol. 2004), providing as follows:

> The Legislature finds that circumstances arise where it is appropriate for circuit courts of this state to order that grandparents of minor children may exercise visitation with their grandchildren. The Legislature further finds that in such situations, as in all situations involving children, the best interests of the child or children are the paramount consideration.

Further, in § 48–10–102 (2001) (Repl. Vol. 2004), the Legislature explicitly states: "It is the express intent of the Legislature that the provisions for grandparent visitation that are set forth in this article are exclusive." Section 48–10–203 (2001) (Repl. Vol. 2004) thereafter defines grandparent as follows: " 'Grandparent' means a biological grandparent, a person married or previously married to a biological grandparent, or a person who has previously been granted custody of the parent of a minor child with whom visitation is sought."

West Virginia Code § 48–10–501 (2001) (Repl. Vol. 2004) provides that "[t]he circuit could shall grant reasonable visitation to a grandparent upon a finding that visitation would be in the best interests of the child and would not substantially interfere with the parent-child relationship." Factors to be considered in making a determination regarding grandparent visitation are listed in West Virginia Code § 48–10–502 (2001) (Repl. Vol. 2004), as follows:

(1) The age of the child;

(2) The relationship between the child and the grandparent;

(3) The relationship between each of the child's parents or the person with whom the child is residing and the grandparent;

(4) The time which has elapsed since the child last had contact with the grandparent;

(5) The effect that such visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;

(6) If the parents are divorced or separated, the custody and visitation arrangement which exists between the parents with regard to the child;

(7) The time available to the child and his or her parents, giving consideration to such matters as each parent's employment schedule, the child's schedule for home, school and community activities, and the child's and parents' holiday and vacation schedule;

(8) The good faith of the grandparent in filing the motion or petition;

(9) Any history of physical, emotional or sexual abuse or neglect being performed, procured, assisted or condoned by the grandparent;

(10) Whether the child has, in the past, resided with the grandparent for a significant period or periods of time, with or without the child's parent or parents;

(11) Whether the grandparent has, in the past, been a significant caretaker for the child, regardless of whether the child resided inside or outside of the grandparent's residence;

(12) The preference of the parents with regard to the requested visitation; and

(13) Any other factor relevant to the best interests of the child.

West Virginia Code § 48–10–702 (2001) (Repl. Vol. 2004) provides guidance regarding the level of proof required in a case such as the present one, in which an action is not pending for divorce, custody, legal separation, annulment, or the establishment of paternity. That statute provides as follows:

> (a) If a petition is filed pursuant to section 10–402 [§ 48–10–402] when the parent through whom the grandparent is related to the grandchild does not: (1) Have custody of the child; (2) share custody of the child; or (3) exercise visitation privileges with the child that would allow partic-

ipation in the visitation by the grandparent if the parent so chose, the grandparent shall be granted visitation if a preponderance of the evidence shows that visitation is in the best interest of the child.

(b) If a petition is filed pursuant to section 10–402 [§ 48–10–402], there is a presumption that visitation privileges need not be extended to the grandparent if the parent through whom the grandparent is related to the grandchild has custody of the child, shares custody of the child, or exercises visitation privileges with the child that would allow participation in the visitation by the grandparent if the parent so chose. This presumption may be rebutted by clear and convincing evidence that an award of grandparent visitation is in the best interest of the child.

▮ The Appellants in the present case did not challenge the underlying decision on the issue of the standing of a biological grandmother to seek grandparent visitation rights with a biological grandchild who has been adopted. In their appeal, the Appellants state: "In this case the natural Grandmother filed a Petition for Visitation with the adopted child, which appears to be within the statutory guidelines." This Court addressed this issue of grandparents' standing to seek visitation under this state's statutory scheme in *State ex rel. Brandon L. v. Moats,* 209 W.Va. 752, 551 S.E.2d 674 (2001). In that case, this Court evaluated the rights of paternal grandparents to visit a biological grandchild subsequent to adoption by the child's step-father and held that "there are no limitations on when a petition may be filed by a grandparent ..." and that "the act does not proscribe consideration of petitions seeking visitation to only pre-adoption situations." 209 W.Va. at 756, 551 S.E.2d at 678 (footnote omitted). The Court found that the adoption statutes did not negate the visitation rights granted in the grandparent visitation statute, recognizing this Court's prior decision in *Nearhoof* regarding the potential conflict between adoption and visitation statutes and also acknowledging the Legislature's specifically articulated intention that the "grand-

parent Act, by its own express declaration, is the exclusive statutory scheme for resolving issues of grandparent visitation." 209 W.Va. at 755, 551 S.E.2d at 677. Significantly, it is well established that "[t]he Legislature, when it enacts legislation, is presumed to know its prior enactments.' Syllabus Point 12, *Vest v. Cobb,* 138 W.Va. 660, 76 S.E.2d 885 (1953)." Syl. Pt. 5, *Pullano v. City of Bluefield,* 176 W.Va. 198, 342 S.E.2d 164 (1986). "As a general rule of statutory construction, if several statutory provisions cannot be harmonized, controlling effect must be given to the last enactment of the Legislature." Syl. Pt. 2, *State ex rel. Dept. of Health and Human Resources v. West Virginia Pub. Employees Ret. Sys.,* 183 W.Va. 39, 393 S.E.2d 677 (1990).

Further, the inclusion of West Virginia Code § 48–10–902 (2001) (Repl. Vol. 2004) within the grandparent visitation statutory structure indicates that the Legislature distinguishes between adoptions occurring within the family and those occurring outside the family with respect to the appropriateness of continued visitation between a grandparent and a grandchild who has been adopted.[4] In that section, the Legislature specified as follows: "If a child who is subject to a grandparent visitation order under this article is later adopted, the order for grandparent visitation is automatically vacated when the order for adoption is entered, unless the adopting parent is a stepparent, grandparent or other relative of the child."

While the child in the present case was not subject to a grandparent visitation order prior to her adoption, and therefore the statute does not definitively resolve this issue, the statute does provides guidance regarding the legislative conception regarding the circumstances under which adoption should sever all visitation between adopted children and their biological grandparents. Cassidy was adopted by her great-uncle in the present case; thus, if a grandparent visitation order had been in place prior to Cassidy's adoption by her great-uncle, the visitation order would not have been automatically vacated pursu-

---

**4.** As observed by the *Brandon* Court, the inclusion of this provision "makes clear that the Legislature both contemplated and approved the continuation of visitation rights following an adoption in those instances where the adoption occurs within the immediate family, as opposed to outside the family." 209 W.Va. at 757, 551 S.E.2d at 679.

ant to the provisions of West Virginia Code § 48–10–902.

It is also of significance that despite vigorous debate, evident within the majority and dissenting opinions in *Brandon* as well as this Court's earlier opinion in *Nearhoof*, regarding the interplay between adoption statutes and visitation statutes, the Legislature has not altered or enhanced the grandparent visitation statute to more clearly express its intentions since the *Nearhoof* and *Brandon* opinions were issued in 1987 and 2001, respectively. Other states' grandparent visitation statutes include more detailed guidance regarding the effect of adoption upon the rights of a biological grandparent. In North Carolina, for instance, North Carolina General Statutes § 50–13.2A (1985) (Repl. Vol. 2001) contains the following detailed explanation:

A biological grandparent may institute an action or proceeding for visitation rights with a child adopted by a stepparent or a relative of the child where a substantial relationship exists between the grandparent and the child. Under no circumstances shall a biological grandparent of a child adopted by adoptive parents, neither of whom is related to the child and where parental rights of both biological parents have been terminated, be entitled to visitation rights. A court may award visitation rights if it determines that visitation is in the best interest of the child. An order awarding visitation rights shall contain findings of fact which support the determi-

nation by the judge of the best interest of the child. Procedure, venue, and jurisdiction shall be as in an action for custody.

The West Virginia Legislature has not provided such additional direction regarding this issue since this Court's decisions in *Nearhoof* and *Brandon*. In *Knight–Ridder Broadcasting, Inc. v. Greenberg*, 70 N.Y.2d 151, 518 N.Y.S.2d 595, 511 N.E.2d 1116 (1987), the court observed as follows:

[I]t is a recognized principle that where a statute has been interpreted by the courts, the continued use of the same language by the Legislature subsequent to the judicial interpretation is indicative that the legislative intent has been correctly ascertained (*Matter of Curtin v. City of New York*, 287 N.Y. 338, 342, 39 N.E.2d 903; *Matter of Gilmore v. Preferred Acc. Ins. Co.*, 283 N.Y. 92, 97, 27 N.E.2d 515; *Transit Commn. v. Long Is. R.R. Co.*, 253 N.Y. 345, 354–355, 171 N.E. 565).

518 N.Y.S.2d 595, 511 N.E.2d at 1119.[5]

■ Syllabus point three of *Brandon*[6] concluded as follows:

The West Virginia Grandparent Visitation Act, West Virginia Code §§ 48–2B–1 to –12 (1998) (Repl. Vol. 1999), by its terms, does not violate the substantive due process right of liberty extended to a parent in connection with his/her right to exercise care, custody, and control over his/her child[ren] without undue interference from the state.

---

**5.** *See also Ex parte HealthSouth Corp.*, 851 So.2d 33, 41–42 (Ala.2002) ("Presumably, when the Legislature reenacts or amends a statute without altering language that has been judicially interpreted, it adopts a particular judicial construction"); *Smith v. Detroit*, 388 Mich. 637, 202 N.W.2d 300, 304 (1972) (" 'Even more persuasive is the rule that where the basic provisions of a statute have been construed by the courts and these provisions are subsequently reenacted by the legislature, it may be assumed that the legislature acted with knowledge ... and ... intended the reenacted statute to carry the Court's interpretation....' ") (emphasis in original) (citations omitted); *Krehlik v. Moore*, 542 N.W.2d 443, 446 (N.D.1996) (approving theory of legislative acquiescence); *Eklund v. Eklund*, 538 N.W.2d 182, 188 (N.D.1995) (holding that Legislature is presumed to know how its statutes have been construed and acquiesces in that construction if it fails to offer any amendments); *Zimmerman v.*

*Wisconsin Electric Power Co.*, 38 Wis.2d 626, 157 N.W.2d 648, 651 (1968) ("[W]hen the legislature acquiesces or refuses to change the law, it has acknowledged that the courts' interpretation of legislative intent is correct"); *contra Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 278 Cal.Rptr. 614, 805 P.2d 873, 880 (1991) ("The presumption of legislative acquiescence in prior judicial decisions is not conclusive in determining legislative intent"); *Amerada Hess Corp. v. Director, Div. of Taxation*, 107 N.J. 307, 526 A.2d 1029, 1037 (1987), aff'd, 490 U.S. 66, 109 S.Ct. 1617, 104 L.Ed.2d 58 (1989) (holding that legislative inaction is "a weak reed upon which to lean") (citations omitted).

**6.** West Virginia Code §§ 48–2B–1 to –12 (1998) (Repl. Vol. 1999), as referenced in *Brandon*, are now codified at West Virginia Code §§ 48–10–101 to –1201 (2001) (Repl. Vol. 2004).

209 W.Va. at 753, 551 S.E.2d at 675. Having so concluded, however, this Court in *Brandon* cautioned that "a grandparent who seeks to avail him or herself of this statutorily-granted mechanism for seeking visitation must be able to demonstrate that the visitation being sought will be in the best interest of the child[ren] and will not substantially interfere with the parent-child relationship." *Id.* at 765, 551 S.E.2d at 687. "This will be very difficult to do in cases where adoptions have preceded the petitions seeking visitation unless the petitioning grandparent[s] can demonstrate . . . that such visitation is likely to be a positive factor in the child's life and will not unduly disrupt the child's relationship with his/her parent(s)." *Id.* at 765, 551 S.E.2d at 687.

■ Thus, as recognized in *Brandon,* a grandparent such as the Appellee in the present case faces a substantial challenge in attempting to demonstrate the grandparent visitation should be ordered. The Appellants in the present case allege that the lower court erred in its analysis of the § 48–10–502 statutory factors to be considered in this case. Specifically, the Appellants assert that the lower court failed to accord proper weight to the parents' wishes regarding visitation. In *Brandon,* this Court specified that it was not assessing "the amount of weight that should attach to the factor of parental preference. . . ." 209 W.Va. at 763, 551 S.E.2d at 685. However, "in light of the *Troxel* decision it is clear that 'the court must accord at least some special weight to the parent's own determination' provided that the parent has not been shown to be unfit." *Id.* at 763,

551 S.E.2d 674, 551 S.E.2d at 685 (quoting *Troxel v. Granville,* 530 U.S. 57, 70, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)).

The parents and the guardian ad litem in the present case [7] contend that the best interests of Cassidy are not served by permitting visitation with the Appellee. In their respective briefs, the parties and the guardian ad litem analyzed each of the factors enumerated in West Virginia Code § 48–10–502 applicable to the present case. Evaluating each of these arguments regarding these numerous factors, this Court first finds that Cassidy's young age mitigates against the requested visitation. The Appellee had not had visitation with Cassidy since she was three years old. Visitation was ordered to resume [8] near Cassidy's fifth birthday. Second, the relationship between the Appellee and Cassidy has been limited. While the Appellee cared for Cassidy every weekend during the first two and one-half years of Cassidy's life, their association since the adoption was pending has been very infrequent. Third, the relationship between the Appellants and the Appellee also mitigates against visitation. The Appellants do not want Cassidy to continue a relationship with the Appellee, preferring to raise Cassidy without intervention from the Appellee.

With regard to the fourth statutory consideration, we find that extensive time has elapsed between Cassidy's regular visitation with the Appellee in the first two and one-half years of her life and the imposition of the visitation order when Cassidy was almost five. The fifth statutory factor involves

---

7. Although this Court agrees with the Appellants' ultimate contentions regarding the best interests analysis, the Appellants' arguments relating to the application of West Virginia Code § 48–10–702 are without merit. The Appellants contend that subsection (b) of the act applies, presenting a presumption that visitation privileges need not be extended to the grandparent and permitting rebuttal of such presumption only by clear and convincing evidence presented by the grandparent that an award of visitation is in the best interests of the child. The Appellants maintain that subsection (b) applies because the statutory phrase "parent through whom the grandparent is related to the grandchild" refers to the adoptive father, Mark R., and the Appellee is related to Mark R. as a former sister-in-law. A careful reading of that statute, however, reveals that the reference to "the parent through whom the grandparent is related to the grandchild" is designed to ascertain whether the grandparent's child (parent of grandchild) has custody, shares custody, or exercises visitation privileges. Thus, it is Jasper R. through whom the Appellee (Jasper's mother) is related to Cassidy. Because Jasper R. does not have custody, share custody, or exercise visitation privileges, subsection (a) of the statute applies, providing that the Appellee "shall be granted visitation if a preponderance of the evidence shows that visitation is in the best interest of the child." W. Va.Code § 48–10–702(a).

8. The visitation order entered by the lower court has not been stayed and, to the best of this Court's knowledge, visitation has continued during the pendency of this appeal.

whether the visitation with the Appellee would be likely to adversely affect the relationship between Cassidy and the Appellants. There does not appear to be any credible evidence that the Appellee's visitation with Cassidy would affect Cassidy's relationship with her parents.

The sixth factor of the statutory list of considerations, dealing with divorce of the parents, is not applicable to this case. Regarding the time available to Cassidy and the Appellants, as referenced in the seventh factor, we find no credible evidence that time is limited or that visitation would be problematic for the Appellants' schedule. The eighth factor, assessing the good faith of the grandparent seeking visitation, mitigates in favor of the Appellee. The record reveals that she and her husband, Robert M., have demonstrated their good faith and commendable intentions during these proceedings. The ninth factor, regarding history of abuse or neglect, is inapplicable. The tenth and eleventh factors, regarding prior time residing with the grandparent, are in the Appellee's favor. The Appellee cared for Cassidy during significant portions of Cassidy's first two and one-half years.

The twelfth factor is the preference of the parents. Based upon the recognition by the United States Supreme Court in *Troxel*, as referenced above, and by this Court in *Brandon* that the parental preference should be given "some special weight," this Court must recognize the Appellants' fervent desire to prevent visitation between the Appellee and Cassidy. *Troxel*, 530 U.S. at 70, 120 S.Ct. 2054. The Appellants have indicated that they do not want Cassidy's true parentage revealed to her at these early stages of her life. Additionally, they do not want to risk involvement with Jasper R., Cassidy's biological father, and they fear that visitation with the Appellee, Jasper's mother, would be detrimental to these goals. The lower court was presented with these considerations and found that the Appellants' concerns about the Appellee's involvement in Cassidy's life were "unwarranted and unfounded."

The profound benefits of a child's relationship with grandparents have been deservedly acclaimed. As observed by this Court in *Nearhoof,*

It is biological fact that grandparents are bound to their grandchildren by the unbreakable links of heredity. It is common human experience that the concern and interest grandparents take in the welfare of their grandchildren far exceeds anything explicable in purely biological terms. A very special relationship often arises and continues between grandparents and grandchildren. The tensions and conflicts which commonly mar relations between parents and children are often absent between those very same parents and their grandchildren. Visits with a grandparent are often a precious part of a child's experience and there are benefits which devolve upon the grandchild from the relationship with his grandparents which he cannot derive from any other relationship. Neither the Legislature nor this Court is blind to human truths which grandparents and grandchildren have always known.

178 W.Va. at 364, 359 S.E.2d at 592 (quoting *Mimkon v. Ford*, 66 N.J. 426, 332 A.2d 199, 204–05 (1975)).

Despite the recognition of the importance of relationships between children and grandparents and continuity of relationships generally, the constitutional admonitions of *Troxel* must be observed. In *Troxel*, the United States Supreme Court held that a Washington state statute providing that any person could petition for visitation at any time, allowing the court to order visitation rights for any person when visitation served the best interests of the child, violated the substantive due process rights of the child's mother. The mother had objected to the court's order permitting paternal grandparents to exercise visitation rights, following the death of the children's father. 530 U.S. at 61, 120 S.Ct. 2054. The United States Supreme Court observed that the Washington statute did not accord proper deference to "a parent's decision that visitation would not be in the child's best interest." *Id.* at 67, 120 S.Ct. 2054. "The problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to [the mother's] determination of her daughters' best interests." *Id.* at 69, 120 S.Ct. 2054. Thus, *Troxel* instructs that a judicial determination regarding whether grandpar-

ent visitation rights are appropriate may not be premised solely on the best interests of the child analysis. It must also consider and give significant weight to the parents' preference, thus precluding a court from intervening in a fit parent's decision making on a best interests basis.

Devoting appropriate weight to the Appellants' preferences in this very difficult case and based upon our review of statutory authority and applicable precedent, we find that grandparent visitation should not have been granted in this case. The preferences of the parents were not adequately considered by the family court, and proper weight was not given to those preferences. The concerns of the parents appear to have been considered and dismissed by the family court, primarily upon the basis of the court's disagreement with the parents regarding the degree of family strain to be occasioned by visitation and the court's perception that visitation would not seriously undermine any plans the parents envisioned for Cassidy or her familial associations. This is precisely the type of situation outlined by the United States Supreme Court in *Troxel*, as it invalidated the Washington statute: "[T]he Washington statute places the best-interest determination solely in the hands of the judge. Should the judge disagree with the parent's estimation of the child's best interests, the judge's view necessarily prevails." 530 U.S. at 67, 120 S.Ct. 2054.

While we emphasize that the objection of a parent would not serve to defeat a grandparent's attempt to seek visitation in every instance,[9] the preponderance of the evidence in the present case, when the parents' wishes are properly incorporated in the analysis, does not indicate that visitation is in the best interests of Cassidy. We consequently reverse the order of the lower court and remand this matter for entry of an order denying grandparent visitation rights to the Appellee and her husband.

Reversed and Remanded with Directions

Justice DAVIS concurs and files a concurring opinion.

DAVIS, J., concurring.

(Filed July 8, 2005)

I fully concur with the majority's Opinion in this case. Nevertheless, I feel compelled to write separately to reiterate my concern enunciated in my dissent in *State ex rel. Brandon L. v. Moats*, 209 W.Va. 752, 766, 551 S.E.2d 674, 688 (2001) (Davis, J., dissenting), that, once a child has been adopted, such adoption severs all ties between the child and the child's biological and/or former adoptive relatives[1] so as to foreclose the right to grandparent visitation otherwise permitted by statute. *See* W. Va.Code § 48–10–902 (2001) (Repl. Vol. 2004) ("If a child who is subject to a grandparent visitation order under this article is later adopted, the order for grandparent visitation is automatically vacated when the order for adoption is entered, unless the adopting parent is a stepparent, grandparent or other relative of the child."). In short, I wish to repeat my earlier admonition that the central aim of adoption is finality, finality in the severance of pre-existing relationships and finality in the creation of new adoptive relationships, which breeds certainty for adopted children and their adoptive parents, alike, in their new adoptive relationship. *See Brandon L.*, 209 W.Va. at 766, 551 S.E.2d at 688 (Davis, J., dissenting) (" 'Finality' is of the utmost importance in an adoption." (quoting *State ex rel. Smith v. Abbot*, 187 W.Va. 261, 266, 418 S.E.2d 575, 580 (1992))).

---

9. As recognized in *Roberts v. Ward*, 126 N.H. 388, 493 A.2d 478 (1985),

> It would be shortsighted indeed, for this court not to recognize the realities and complexities of modern family life, by holding today that a child has no rights, over the objection of a parent, to maintain a close extra-parental relationship which has formed in the absence of a nuclear family.

493 A.2d at 481.

1. Except, of course, in the case of stepparent adoption wherein the spouse of the stepparent, who is also the child's biological or adoptive parent, retains his/her relationship with the child as do the parents of that parent. *See* W. Va.Code § 48–22–703(a) (2001) (Repl. Vol. 2004) (stating that, "[u]pon the entry of such order of adoption, any person previously entitled to parental rights, any parent or parents by any previous legal adoption, and the lineal or collateral kindred of any such person, parent or parents, *except any such person or parent who is the husband or wife of the petitioner for adoption*, shall be divested of all legal rights ..." (emphasis added)).

Moreover, I applaud the majority's recognition and application of these principles in the case *sub judice*, and encourage my brethren to continue to proceed with caution where claims for grandparent visitation have been tainted by the subject child's adoption and the grandparents' resultant divestiture of their grandparental status and attendant standing to seek visitation in such capacity.

For the foregoing reasons, I respectfully concur with the Opinion of the Court.