624 S.E.2d 578

**Kimberly TURLEY (Formerly Keesee), Respondent Below, Appellant,**

v.

**Daisy KEESEE, et. al., Petitioners Below, Appellees.**

No. 32696.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 11, 2005.

Decided Dec. 1, 2005.

Amy M. Herrenkohl, Esq., Herrenkohl Law Office, Barboursville, West Virginia, Attorney for Appellant.

David J. Lockwood, Esq., Lockwood & Vital, Huntington, West Virginia, Attorney for Appellees.

The Opinion of the Court was delivered PER CURIAM.

PER CURIAM:

This case is before the Court on appeal from the November 15, 2004, Order of the Circuit Court of Cabell County affirming the August 26, 2004, Order on Remand of the Family Court of Cabell County granting grandparent visitation to Appellee Daisy Keesee with Appellant's children. This Court has before it the petition for appeal, the response, the briefs of the parties, and all matters of record. Following the arguments of the parties and a review of the record herein, this Court finds that the circuit court erred in affirming the family court's Order on Remand, which lacked specific findings of fact. Accordingly, this Court reverses the November 15, 2004, Order of the circuit court and remands the matter to the family court for specific findings of fact upon which to base the court's decision.

I.

FACTS

Kimberly Turley (formerly Keesee) and Kevin Kessee were divorced in Cabell County, West Virginia, on January 28, 2003.[1] At that time, Ms. Turley was granted custody of the couple's two minor children, Hollie, born January 29, 1993, and Ashley, born September 5, 2000. Kevin Keesee was not granted visitation rights with the children, apparently due to concerns about domestic violence.

Based on her own judgment, Ms. Turley also refused the paternal grandparents, Daisy and John Keesee,[2] visitation with Hollie and Ashley following the divorce and Ms. Turley's subsequent remarriage. Ms. Turley was concerned that the Keesees would permit Kevin Keesee to see the children in violation of a protective order entered on August 9, 2002, thus endangering the children's lives. She was also concerned that the Keesee's home was not an appropriate environment for the children because John Keesee allegedly had a history of alcohol abuse. Kevin Keesee and his brother, Buddy, who lived nearby the Keesees, both have criminal records.

On January 21, 2004, the Keesees petitioned the family court to establish visitation rights with the grandchildren. The Keesees alleged in their petition that, prior to Ms. Turley and Kevin Keesee's divorce, Hollie and Ashley had maintained a close relationship with their paternal grandparents, visiting with them almost every weekend and speaking to them on the phone daily. Ms. Turley responded that she had never been comfortable letting the children visit with the Keesees, but that she did so under duress during her marriage. A hearing was held on March 29, 2004, following which the family court apparently granted the Keesees visitation with their grandchildren.[3] Ms. Turley moved to set aside the ruling, asserting that she had not received notice of the hearing and was not represented by counsel at the time that the hearing was conducted. The family court set aside its ruling and set a full evidentiary hearing on the matter of grandparent visitation.

On July 1, 2004, the family court entered an Order granting the Keesees visitation with the children for six hours on the first and third Sundays of each month. The Kee-

---

1. The couple's divorce was granted on the grounds of irreconcilable differences. A protective order entered on August 9, 2002, remained in full force and effect following the divorce.

2. John Keesee passed away on November 6, 2004.

3. The family court apparently ruled from the bench because no order regarding the March 29, 2004, hearing can be found in the record.

sees were directed in the Order not to inform Kevin Keesee of the visitation schedule and not to allow Kevin Keesee to have any contact with the children.[4] At Ms. Turley's request, however, the family court stayed the Order pending her appeal.

Ms. Turley's appeal was based on the family court's failure to make specific findings of fact as to the children's best interests, whether the Keesees rebutted the legal presumption that Ms. Turley's decision to deny visitation was based on rational and legitimate concerns, and whether the children should maintain a relationship with their paternal grandparents when such a relationship might place them at risk. The circuit court agreed and found that the family court failed to address the factors laid out in W. Va.Code §§ 48–10–501 and 48–10–502 and *Mary Jean H. v. Pamela Kay R.*, 198 W.Va. 690, 693, 482 S.E.2d 675, 678 (1996). The circuit court remanded the matter for further findings of fact.

On remand, the family court issued a second Order reflecting the court's "feeling" that it was in the best interests of the children that they visit with their paternal grandparents but, again, failed to make any specific findings of fact and conclusions of law. Ms. Turley again appealed, but this time the circuit court (presided over by a different circuit court judge) affirmed the family court's Order.

## II.

### STANDARD OF REVIEW

This Court has previously held that "[i]n reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl. Pt., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004). *See also,*

Syl. Pt. 2, *Lucas v. Lucas*, 215 W.Va. 1, 592 S.E.2d 646 (2003).

## III.

### DISCUSSION

On appeal, Ms. Turley's arguments essentially distill to whether it is in the best interests of Hollie and Ashley to visit with their paternal grandparents. W. Va.Code § 48–10–501 (2001) (Repl.Vol.2004) provides that "[t]he circuit court shall grant reasonable visitation to a grandparent upon a finding that visitation would be in the best interests of the child and would not substantially interfere with the parent-child relationship." The Legislature went on to say in W. Va. Code § 48–10–502 (1998) (Repl.Vol.2004):

In making a determination on a motion or petition [for grandparent visitation] the court shall consider the following factors:

(1) The age of the child;

(2) The relationship between the child and the grandparent;

(3) The relationship between each of the child's parents or the person with whom the child is residing and the grandparent;

(4) The time which has elapsed since the child last had contact with the grandparent;

(5) The effect that such visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;

(6) If the parents are divorced or separated, the custody and visitation arrangement which exists between the parents with regard to the child;

(7) The time available to the child and his or her parents, giving consideration to such matters as each parent's employment schedule, the child's schedule for home, school and community activities, and the child's and parents' holiday and vacation schedule;

4. The family court entered a second Order on August 10, 2004, that slightly modified the July 1, 2004, Order. Whereas the July Order dictates where the exchange of the children should take place and that the Keesees shall not allow Kevin

Keesee to have any contact with the children, the August Order does not. And whereas the July Order directs that the children should continue counseling for five months, the August Order directs that counseling continue for six months.

(8) The good faith of the grandparent in filing the motion or petition;

(9) Any history of physical, emotional or sexual abuse or neglect being performed, procured, assisted or condoned by the grandparent;

(10) Whether the child has, in the past, resided with the grandparent for a significant period or periods of time, with or without the child's parent or parents;

(11) Whether the grandparent has, in the past, been a significant caretaker for the child, regardless of whether the child resided inside or outside of the grandparent's residence;

(12) The preference of the parents with regard to the requested visitation; and

(13) Any other factor relevant to the best interests of the child.

■ We have held that "[a] trial court, in considering a petition of a grandparent for visitation rights with a grandchild or grandchildren pursuant to W. Va.Code, § 48–2–15(b)(1) [1986] or W. Va.Code, § 48–2B–1 [1980], shall give paramount consideration to the best interests of the grandchild or grandchildren involved." Syl. Pt. 1, *Petition of Nearhoof,* 178 W.Va. 359, 359 S.E.2d 587 (1987); Syl. Pt. 2, *Visitation of Cathy L.(R.)M. v. Mark Brent R.,* 217 W.Va. 319, 617 S.E.2d 866 (2005).[5] We have also held that "[t]he Due Process Clauses of Article III, Section 10 of the Constitution of West Virginia and of the Fourteenth Amendment of the Constitution of the United States protect the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Syl. Pt. 3, *Lindsie D.L. v. Richard W.S.,* 214 W.Va. 750, 591 S.E.2d 308 (2003). These are two very important principles which permeate our law in both custodial and visitation rights cases as well as in abuse and neglect proceedings. They must be given every consideration in a case such as the one presently before the Court. To that end, the Legislature has gone to great lengths to enumerate the factors listed in W. Va.Code § 48–10–502. These factors should be clearly addressed in

any family court order granting grandparent visitation rights.

■ We turn, then, to the August 26, 2004, Order on Remand. In it's Order remanding the matter to the family court, the circuit court had directed the family court to make a determination as to whether it was in the best interests of the children for the Keesees to have visitation, taking into consideration the factors set out in W. Va.Code §§ 48–10–501 and 48–10–502 and *Mary Jean H. v. Pamela Kay. R.,* 198 W.Va. 690, 693, 482 S.E.2d 675, 678 (1996). The family court's Order on Remand, which was only two pages long, contained only conclusory statements regarding the best interests of the children and the remaining factors set forth in W. Va.Code § 48–10–502. Again, Ms. Turley appealed the Order; however, the circuit court (presided over by a different circuit judge) affirmed the family court's Order on November 15, 2004.

We find that the family court's Order on Remand does not satisfy the requirements of W. Va.Code § 48–10–502. Merely restating the thirteen factors and tacking on to them the court's "feeling" that each factor has been satisfied is not enough. The family court must thoroughly evaluate how each factor applies to the specific facts and allegations contained in the case before it. The same evaluation must be made as to the best interests of the children. Accordingly, we hold that the family court clearly erred in not making appropriate, specific findings of fact with regard to those factors set forth in W. Va.Code §§ 48–10–501 and 48–10–502. The circuit court therefore erred in affirming the family Court's August 26, 2004, Order on Remand. Finding that the family court's Order on Remand is insufficient, we need not address the merits of the case.

IV.

CONCLUSION

For the reasons set forth above, the Order of the Circuit Court of Cabell County is

---

5. W. Va.Code §§ 48–2–15(b)(1) and 48–2B–1 were the precursors to the current grandparent visitation act.

reversed, and this case is remanded to the Family Court of Cabell County for a new hearing and for specific findings of fact and conclusions of law upon which the Family Court bases its decision. The August 26, 2004, Order on Remand of the family court is stayed pending the entry of a new order.

Reversed and Remanded with directions.