IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 20-0037

_____

FILED
June 8, 2021
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE Grandparent Visitation of L.M., A.M., E.M., J.M., B.M., and S.M.

_____

Appeal from the Circuit Court of Nicholas County
The Honorable Richard A. Facemire, Judge
Civil Action No. 18-D-186

AFFIRMED

_____

Submitted: March 24, 2021
Filed: June 8, 2021

Todd A. Kirby, Esq.
D. Allan Martin, Esq.
Kirby & Ashley, L.C.
Beckley, West Virginia
Counsel for Petitioner

Julia R. Callaghan, Esq.
Callaghan & Callaghan, PLLC
Summersville, West Virginia
Guardian ad Litem for the Children

Jefferson L. Triplett, Esq.
George R. Triplett, Esq.
Triplett & Triplett L.C.
Elkins, West Virginia
Counsel for Respondents

JUSTICE ARMSTEAD delivered the Opinion of the Court.

JUSTICE WOOTON concurs and reserves the right to file a concurring opinion.

CHIEF JUSTICE JENKINS dissents and reserves the right to file a dissenting opinion.

JUSTICE HUTCHISON dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1.      "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*."  Syllabus, *Carr v. Hancock,* 216 W. Va. 474, 607 S.E.2d 803 (2004).

2.      "An appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment." Syllabus Point 5, *Morgan v. Price,* 151 W. Va. 158, 150 S.E.2d 897 (1966).

3.      "'The Due Process Clauses of Article III, Section 10 of the Constitution of West Virginia and of the Fourteenth Amendment of the Constitution of the United States protect the fundamental right of parents to make decisions concerning the care, custody, and control of their children.'  Syl[labus] P[oint] 3, *Lindsie D.L. v. Richard W.S.*, 214 W. Va. 750, 591 S.E.2d 308 (2003)."  Syllabus Point 2, *Meagan S. v. Terry S.*, 242 W. Va. 452, 836 S.E.2d 419 (2019).

4.     "The Grandparent Visitation Act, W. Va. Code § 48–10–101 *et seq.*, is the exclusive means through which a grandparent may seek visitation with a grandchild." Syllabus Point 1, *In re Hunter H.,* 231 W. Va. 118, 744 S.E.2d 228 (2013).

Armstead, Justice:

V.Y.[1] ("Petitioner"), the mother of the children at issue, appeals the Circuit Court of Nicholas County's[2] order affirming the family court's order which crafted a reunification plan with the goal of allowing grandparent visitation to C.M. and D.M. ("Respondents"), the paternal grandparents of L.M., A.M., E.M., J.M., B.M., and S.M. (collectively, "the children").

Upon review of the record, hearing the arguments of counsel, and research of the pertinent legal authorities, we conclude that Petitioner did not meet her burden to demonstrate error and we therefore affirm the circuit court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner and L.C.M. were married and the children were born of their marriage. Sometime in late 2017 or early 2018, they separated and their final divorce decree was entered on June 29, 2018. As a result of that divorce, Petitioner was granted

---

[1] As this case is concerned with minor children, we will follow our long-standing practice of identifying the parties by their initials. *See, e.g., State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] By Administrative Order of this Court entered on October 2, 2019, the request for voluntary recusal by the Honorable Stephen O. Callaghan, Judge of the Twenty-Eight Judicial Circuit, was granted and the Honorable Richard A. Facemire, Judge of the Fourteenth Judicial Circuit, was assigned to the Nicholas County Circuit Court to preside over this matter.

full custody of the children and L.C.M. was granted supervised visitation. By request of Petitioner, visitation was supervised by L.C.M.'s parents, the Respondents.

During the visitation exchange on September 21, 2018, Petitioner's father, the children's maternal grandfather, delivered the children to a parking lot in Craigsville, West Virginia. L.C.M., along with his father, Respondent C.M., came at the appointed time to exchange the children. During that exchange, and in the presence of all the children, the maternal grandfather drew a handgun and shot L.C.M. L.C.M. died of his wounds at the scene. Thereafter, the children witnessed their maternal grandfather turn the gun on himself and commit suicide.

In the following weeks, there were two funerals. Petitioner did not allow the children to attend either the service for the maternal grandfather or the service for L.C.M. On October 5, 2018, one day prior to L.C.M.'s memorial service, Respondents filed their petition for grandparent visitation in family court and sought an *ex parte* order requiring the children to attend L.C.M.'s memorial service. The family court denied the *ex parte* relief, appointed a guardian ad litem for the children, and scheduled a hearing on the visitation petition for November 27, 2018. Due to a scheduling conflict, the matter was rescheduled for January 14, 2019.

Prior to that hearing date, the guardian ad litem met with the children, the children's therapists, Respondents, and Petitioner. On January 9, 2019,[3] the guardian ad litem filed a comprehensive report[4] recommending that Respondents be granted visitation with the children. As the family court noted, "when the [guardian ad litem] filed her comprehensive report, all of the [children's] counselors were in agreement as to the recommendation for the commencement of contact between [Respondents] and some of the minor children in a therapeutic setting."

The hearing in this matter took place over a ten-hour period on May 15, 2019, during which the family court heard from thirteen witnesses, including the parties and the children's therapists. The next day, the family court discovered that its recording system failed to memorialize the hearing. Thereafter, the family court sent a letter to all parties explaining the situation and informing the parties "that its ability to make findings of fact, conclusions of law and render a decision in this matter [was] not impacted." A telephonic hearing was held on May 29, 2019, to discuss the lack of an appealable record and the

---

[3] On the same day, Brandon S. Steele, Esquire, filed a notice of appearance and a motion to continue in the family court on behalf of Petitioner. Because Mr. Steele was a member of the West Virginia Legislature, pursuant to the provisions of West Virginia Code § 4-1-17 (2005), he could not be compelled to appear prior to the conclusion of the legislative session. Thereafter, the family court rescheduled this matter for a pretrial hearing on May 6, 2019, and a final hearing for May 15, 2019. Mr. Steele does not appear as counsel before this Court.

[4] The guardian ad litem's report and her June 14, 2019 update were incorporated by reference into the family court's final order.

parties agreed to submit proposed findings of fact and conclusions of law. The family court directed the guardian ad litem to submit in writing "updated findings/recommendations to her prior report, consistent with her in-court testimony."

On July 8, 2019, the family court entered a substantial, highly detailed, and well-reasoned thirty-nine page order establishing a reunification therapy plan requiring a reunification therapist to recommend to the family court whether to grant grandparent visitation to Respondents.[5]   In that order, the family court applied the thirteen factors enumerated in West Virginia Code § 48-10-502 (2001) regarding grandparent visitation, found that Petitioner "is a fit parent, as defined by applicable law," and gave special weight to Petitioner's preference that no visitation be had between Respondents and the children. On the latter issue, the family court acknowledged the applicable law requiring it to afford special weight to Petitioner's preference regarding visitation stating in its orders, "[t]he [c]ourt is required to give [the twelfth] factor 'special weight.'  The [c]ourt believes that it has given this factor special weight in rendering a decision."  The family court proceeded to find that "[e]ven giving the twelfth factor 'special weight,' the [c]ourt finds by a preponderance of the evidence that the totality of the thirteen (13) factors weigh[s] in favor

---

[5]   This thirty-nine page order contains one hundred and forty-four numbered findings of fact, followed by nineteen numbered conclusions of law.  Many of these findings and conclusions include multiple subparagraphs.  This Court appreciates and acknowledges the family court's efforts in thoroughly analyzing the facts and law in this and its subsequent order.

of a grant of reasonable grandparent visitation."[6] Importantly, the family court also found that grandparent visitation was in the best interest of the children and that it would not substantially interfere with the parent-child relationship.

As a part of its findings in its July 8, 2019 order, the family court established a visitation schedule that detailed the responsibilities of the parties. In that schedule, the family court required joint therapy sessions between Respondents and the children, and required Petitioner to participate in therapy sessions with the children.[7] The family court further adopted a graduated schedule starting with supervised visits with the children which would progress into unsupervised overnight visits and visitation during the children's Christmas vacation from school, culminating in a full week of visitation during summer recess from school. Importantly, the family court twice included specific[8] provisions allowing for immediate review of its order:

> If, any time after the first therapeutic family session, [Petitioner] has a good faith belief that any of the children are adversely and/or negatively affected by the visit to the point that it is detrimental to their well-being, counsel for [Petitioner]

---

[6] "[T]he Legislature has gone to great lengths to enumerate the factors listed in W. Va. Code § 48–10–502. These factors should be clearly addressed in any family court order granting grandparent visitation rights." *Turley v. Keesee*, 218 W. Va. 231, 234, 624 S.E.2d 578, 581 (2005).

[7] The first two joint sessions were to be with L.M. only. B.M. and S.M. were to be added for the third session, while J.M. and E.M. were included in the fourth. Provisions were made to add A.M. to the sessions when counselors "determine[ed] the pace at which A.M. will be included."

[8] The two provisions differ in only minor respects. The substance of the two admonitions is exactly the same. We quote the first here.

5

may file a [m]otion detailing the same and the [c]ourt will schedule a prompt telephonic hearing. If a [m]otion is filed, all further therapeutic family sessions will be delayed pending a hearing.

The July 8, 2019 order also included a clear statement addressing the failure of the family court's recording system by granting all parties the right to seek reconsideration of its order. Specifically, the family court stated:

> Due to the lack of an appealable record, the [c]ourt will grant a hearing to any party upon the filing of a proper motion for reconsideration, *for the purpose of making a record and presenting any testimony or evidence presented at the hearing on May 15, 2019.*

(emphasis added).

After the family court ruled, Petitioner filed objections and moved for reconsideration. The family court heard testimony on the motion for reconsideration on August 26, 2019. However, instead of making a record of the evidence missing from the May 15, 2019 hearing transcript, Petitioner offered the testimony of the children's therapists, Mary Lilly (counselor for A.M. and E.M.), Brittany Henderson (counselor for J.M.), and Stephani Trent (counselor for L.M.) to explain why they no longer recommended grandparent visitation. In its September 19, 2019 order from this seven-hour hearing, the family court observed that in contrast to the initial report from the guardian ad litem, "after hearing further testimony from all of the counselors . . all three . . . clearly recommend against visitation at this time." In that order, the family court granted, in part, the motion for reconsideration. This seven-page order made certain changes to the

6

findings contained in the July 8, 2019 order. Particularly, the September 19, 2019 order made significant changes to the previously established visitation schedule. Instead of establishing grandparent visitation with a regimented schedule, this order required the Respondents and the children to undergo reunification counseling and that future visitation with L.M., J.M., B.M. and S.M. "shall be carried out in accordance with the recommendations of the reunification therapist." The family court further stated, "the Court will defer to the discretion and recommendation of the reunification therapist as to if and when and [sic] joint therapy sessions with the minor children and [Respondents] are proper. The [family court] will schedule review hearings to monitor the minor children's progress." The family court also excluded A.M. and E.M. from the reunification therapy, allowing for future hearings on the question of visitation between those children and Respondents. Therefore, in modifying its July 8, 2019 order, the family court changed course and no longer ordered immediate grandparent visitation but established a therapeutic process, which could possibly lead to grandparent visitation if recommended by the reunification therapist. These two orders, taken together, constituted a roadmap by which eventual grandparent visitation could be achieved. They also allowed Petitioner the opportunity to request a halt of the reunification process by filing a good faith motion.

Petitioner appealed the decision of the family court to the circuit court, which affirmed, stating:

> The [f]amily [c]ourt conducted a meticulous analysis of the thirteen (13) statutory factors to consider before granting grandparent visitation, as set forth in [West Virginia] Code §

7

48-10-502. The [f]amily [c]ourt did give special weight and consideration to [Petitioner's] preference that grandparent visitation not occur. However, in considering that factor, the [f]amily [c]ourt is not obligated to ignore all of the other factors present, and should consider the totality of the circumstances. The [f]amily [c]ourt found that there were eight (8) factors in favor of the visitation. Furthermore, the [f]amily [c]ourt took great pains to establish a counseling schedule for the children to facilitate the reunification visits with [Respondents]. The [f]amily [c]ourt made special provisions to accommodate the different needs of each individual child, and the [f]amily [c]ourt set out a process for the [f]amily [c]ourt and the [g]uardian ad [l]item to continue to monitor the progress of the children and the visits. The [c]ourt finds that the [f]amily [c]ourt did not err and did not abuse its discretion in its application of the law to the unique facts and circumstances of this case.

It is from the entry of the circuit court's December 19, 2019 order affirming the family court that Petitioner appeals.

## II. STANDARD OF REVIEW

Review of family court decisions are governed by the following:

In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

Syllabus, *Carr v. Hancock,* 216 W. Va. 474, 607 S.E.2d 803 (2004). Along with this standard comes the fundamental principle that Petitioner must point this Court to an error in the record to entitle her to relief. Rule 7(d) of the West Virginia Rules of Appellate Procedure requires that "petitioner shall prepare and file an appendix containing ... [t]he

8

judgment or order appealed from, and all other orders applicable to the assignments of error on appeal," *"[m]aterial excerpts from official transcripts of testimony or from papers in connection with a motion*," and *"[o]ther parts of the record to which the parties wish to direct the Court's attention.*" *W. V. R. App. P.* 7(d) (emphasis added).

This requirement is expounded upon in Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure which requires that "[t]he argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." Under this Rule, "[t]he Court may disregard errors that are not adequately supported by specific references to the record on appeal." As we have previously held,

> An appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.

Syllabus Point 5, *Morgan v. Price,* 151 W. Va. 158, 150 S.E.2d 897 (1966). Further, we "will not consider an error which is not properly preserved in the record nor apparent on the face of the record." Syllabus Point 4, *State v. Browning,* 199 W. Va. 417, 485 S.E.2d 1 (1997).

In this case, Petitioner's citations to the record overwhelmingly consist of citations to orders and pleadings filed below. As noted above, there was no record of the May 15, 2019 family court hearing. However, the family court gave the parties the

9

opportunity to request another hearing "for the purpose of making a record and presenting any testimony or evidence presented at the hearing on May 15, 2019." No party took the family court up on that extraordinary offer. Petitioner did ask for and receive a hearing on August 26, 2019, on her motion for reconsideration. However, the only testimony offered by Petitioner at that hearing and available for this Court to review consists of testimony from the children's therapists. Even after adducing this testimony, Petitioner does not cite to or quote any portion of their testimony in her brief. Instead, she places substantial reliance upon the family court's orders despite having some record evidence to which she could point.

Thus, Petitioner neither created a reviewable record for appellate review when the family court gave her the opportunity to do so nor did she point to any evidence adduced at the August 26, 2019 hearing in her filings with this Court. In fact, none of the testimony offered on August 26, 2019, provided any helpful insight into the relevant statutory factors. As noted throughout this opinion, that dearth of testimony makes it impossible for this court to find error and is fatal to Petitioner's appeal. Nevertheless, given the gravity of the factual matters and to afford consideration of petitioner's arguments which are not affected by the absence of a reviewable record, we will proceed to address petitioner's assignments of error as asserted.

## III. ANALYSIS

This matter contains some of the most heart-wrenching facts imaginable. Six innocent children witnessed their father and grandfather die in a most terrifying manner. At that moment, not only did the children lose their father but Respondents lost a son. With this devastating background, the family court was tasked with the difficult duty of weighing the interests of the children who have endured tremendous emotional hardship, their Petitioner mother who has strived to help them move forward from this trauma, and the Respondent grandparents who lost their son and all contact with the children.

As the family court found Petitioner to be a fit parent, we acknowledge that the United States Supreme Court has recognized that the rearing of children is of constitutional importance and that the preference of a fit parent regarding grandparent visitation must be given significant weight. *See Troxel v. Granville*, 530 U.S. 57 (2000). "'The Due Process Clauses of Article III, Section 10 of the Constitution of West Virginia and of the Fourteenth Amendment of the Constitution of the United States protect the fundamental right of parents to make decisions concerning the care, custody, and control of their children.' Syl[labus] [Point] 3, *Lindsie D.L. v. Richard W.S.*, 214 W. Va. 750, 591 S.E.2d 308 (2003)." Syllabus Point 2, *Meagan S. v. Terry S.*, 242 W. Va. 452, 836 S.E.2d 419 (2019).

> In discussing the rationale of *Troxel,* this Court has observed that the Supreme Court "instructs that a judicial determination regarding whether grandparent visitation rights are appropriate may not be premised solely on the best interests of the child analysis." [*Visitation of] Cathy L.[(R.)]M. v. Mark*

11

> *Brent R.,* 217 W. Va. 319, 327–28, 617 S.E.2d 866, 874–75 (2005). Rather, the evaluating court "must also consider and give significant weight to the parents' preference, thus precluding a court from intervening in a fit parent's decision making on a best interests basis." *Id.*

*In re Visitation of A.P.*, 231 W. Va. 38, 42, 743 S.E.2d 346, 350 (2013).

At common law, "grandparents possessed no legal right to custody or visitation of a grandchild over the parent's objection." *Petition of Nearhoof,* 178 W. Va. 359, 361, 359 S.E.2d 587, 589 (1987) (cleaned up).  Thus, our Legislature has created a framework for grandparents to seek visitation.  "The Grandparent Visitation Act, W. Va. Code § 48–10–101 *et seq.*, is the exclusive means through which a grandparent may seek visitation with a grandchild." Syllabus Point 1, *In re Hunter H.,* 231 W. Va. 118, 744 S.E.2d 228 (2013).  Under this Act, a "grant [of] reasonable visitation to a grandparent" shall be made when two elements are satisfied:  1) "upon a finding that visitation would be in the best interests of the child and [2)] would not substantially interfere with the parent-child relationship."  W. Va. Code § 48-10-501 (2006).  "[I]f a preponderance of the evidence shows that visitation is in the best interest of the child," grandparent visitation "shall be granted."  W. Va. Code § 48-10-702(a) (2001).

To weigh a petition for grandparent visitation, our Legislature adopted thirteen factors for courts to consider.  *See* W. Va. Code § 48-10-502.  These thirteen factors are:

(1) The age of the child;

12

(2) The relationship between the child and the grandparent;
(3) The relationship between each of the child's parents or the person with whom the child is residing and the grandparent;
(4) The time which has elapsed since the child last had contact with the grandparent;
(5) The effect that such visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;
(6) If the parents are divorced or separated, the custody and visitation arrangement which exists between the parents with regard to the child;
(7) The time available to the child and his or her parents, giving consideration to such matters as each parent's employment schedule, the child's schedule for home, school and community activities, and the child's and parents' holiday and vacation schedule;
(8) The good faith of the grandparent in filing the motion or petition;
(9) Any history of physical, emotional or sexual abuse or neglect being performed, procured, assisted or condoned by the grandparent;
(10) Whether the child has, in the past, resided with the grandparent for a significant period or periods of time, with or without the child's parent or parents;
(11) Whether the grandparent has, in the past, been a significant caretaker for the child, regardless of whether the child resided inside or outside of the grandparent's residence;
(12) The preference of the parents with regard to the requested visitation; and
(13) Any other factor relevant to the best interests of the child.

*Id*.

This Court has held that those provisions contemplate the special weight that is constitutionally afforded a fit parent's wishes in its twelfth factor. *See State ex rel. Brandon L. v. Moats*, 209 W. Va. 752, 763, 551 S.E.2d 674, 685 (2001)**.** We are mindful that:

> In an ideal world, parents might always seek to cultivate the bonds between grandparents and their grandchildren. Needless to say, however, our world is far from perfect, and in it the decision whether such an intergenerational relationship would be beneficial in any specific case is for the parent to make in the first instance. And, if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination.

*In re Visitation of A.P.*, 231 W. Va. at 42, 74. S.E.2d at 350 (citation omitted). Although we have never attached mathematical certainty to a fit parent's parental preference, we have noted that "in light of the *Troxel* decision it is clear that the court must accord at least some special weight to the parent's own determination provided that the parent has not been shown to be unfit." *Id.* (internal quotation omitted).

In this case, Petitioner first maintains that the family court and circuit court infringed on her constitutional right to rear her children by not properly applying "special weight" to her preference. We have previously ruled our Grandparent Visitation Act is constitutional. *See*, Syllabus Point 3, *Brandon L.* ("The West Virginia Grandparent Visitation Act, West Virginia Code §§ 48–2B–1 to –12 (1998) (Repl.Vol.1999) [recodified in West Virginia Code §§ 48-10-101 to 48-10-1201 in 2001], by its terms, does not violate the substantive due process right of liberty extended to a parent in connection with his/her right to exercise care, custody, and control over his/her child[ren] without undue interference from the state."). However, that holding does not necessarily preclude us from finding the application of the statute unconstitutional as applied to the facts of a particular case. *See Troxel,* 530 U.S. at 75 (Washington statute unconstitutional as applied). Thus,

14

even though this Court has found the statute facially constitutional, it must still be applied in a constitutional manner to comply with *Troxel's* mandate.

To find such application constitutionally sound, three aspects of *Troxel* must be met. First, a parent's "fundamental liberty interest" in the rearing of their children must be recognized because fit parents are presumed to act in the best interests of their children. *Id.,* 530 U.S. at 65. Second, given a parent's liberty interest in childrearing, the state will "normally" have no reason to question parental decisions. *Id.,* 530 U.S. at 68. *Troxel* emphasized that its ruling did not rest on a fit parent's "normal" right to be free of state intervention in parenting decisions, but instead rested on a "combination of ... factors." *Id.* 530 U.S. at 68, 71. Third, the United States Supreme Court established that a fit parent's preference regarding grandparent visitation must be afforded the "special weight" we discussed above. *Id.* 530 U.S. at 70. The trial court in *Troxel* failed to give "at least some special weight" to the mother's "determination of her daughters' best interests." *Id.* 530 U.S. at 69. This "special-weight" prerequisite is codified as factor twelve of our Grandparent Visitation Act. As explained more fully below, the family court did place significant weight upon Petitioner's preference and determined that this factor weighs against grandparent visitation.

Petitioner's second argument is that the lower tribunals improperly applied the thirteen factors contained in West Virginia Code § 48-10-502. Specifically, Petitioner takes issue with the family court's findings as to factors one, two, four, seven, nine, ten,

15

eleven, twelve, and thirteen. Respondents and the guardian ad litem respond that the lower court gave special weight to Petitioner's preference and that the thirteen factors were properly balanced. We reiterate, however, that this case has an inadequate record and the parties chose to forego the opportunity afforded them by the family court to supplement the record in light of the absence of a recording of the May 15, 2019 hearing. With rare exception, nearly all of Petitioner's citations to the "record" are citations to the family court's orders themselves. For this reason, we are disinclined to disturb the findings of the factfinder, particularly with regard to its credibility findings. We will now examine each of the thirteen factors, in turn.

A.      The Uncontested Factors

The parties agree with the family court's rulings on factors three, five, six, and eight. As there is no disagreement as to these factors, we will only briefly discuss them here.

1)      Factor Three – The Relationship Between Petitioner and Respondents

Prior to the shooting there was a good relationship between Petitioner and Respondents. Nonetheless, because of the clear animus between Petitioner and Respondents duly noted in the family court's order, the family court determined this factor weighed against visitation.

16

2) Factor Five – Effect On Relationship Between Petitioner and The Children

The family court weighed this factor against visitation mainly based upon the concern that the animus among the parties would infect the relationship between Petitioner and the children.

3) Factor Six – Custody and Visitation Between Divorced Parents

The family court found this factor to be neutral based upon the fact that L.C.M. is deceased.

4) Factor Eight – Respondents' Good Faith In Filing Visitation Petition

There was no dispute regarding the fact that the grandparent visitation petition was filed in good faith.

B. The Contested Factors

As for the remaining factors, Petitioner challenges the family court's rulings, pointing this Court to the family court's orders in support of her arguments. We cannot say that the family court erred if Petitioner does not point us to evidence that refutes the findings made by the family court. Petitioner's failure to create a more comprehensive record when offered the chance to do so, coupled with the lack of citation to evidence, leads us to conclude that the family court did not err. Bearing that in mind, we now

17

examine the remaining factors, noting where Petitioner did not provide evidentiary support for meaningful review.

1)	Factor One – The Children's Age

On September 21, 2018,[9] the children were the following ages:  L.M., ten years old, A.M., nine years old, E.M., eight years old, J.M., seven years old, B.M., three years old, and S.M., one year old.

The family court found that this factor weighed "more heavily in favor of the four" oldest children having visitation with Respondents but "it is important that the younger siblings [B.M. and S.M.] be included in any visitation involving their siblings." Petitioner argues that because the children are of an age that they should be allowed to express their own preferences, the family court erred by not giving any consideration to their preferences, and that the age of the two youngest children militates against visitation. Thus, Petitioner contends, this factor should be weighed against visitation.  In support of this argument, Petitioner cites only to two exhibits[10] in the record that are not orders or

---

[9]  This date is significant in that it is the date that the shootings took place and is the last date that Respondents saw the children.  The instant petition was filed a mere fourteen days later.

[10] These two exhibits are:  1) A Treatment Summary for L.M. dated May 8, 2019, and attached as Exhibit 1 to the guardian ad litem's disclosure of documents and 2) A Treatment Summary for J.M. dated November 28, 2018, and attached as Exhibit 10, to the guardian ad litem's report.  Both documents were attached to pleadings below.

pleadings. Neither of these exhibits demonstrate the family court erred. Thus, we cannot conclude that the family court was wrong in weighing this factor in favor of visitation.

2)      Factor Two – The Relationship Between The Children and Respondents

The family court found this factor to weigh in favor of visitation. Similar to the first factor, the older children had a more substantial relationship with Respondents than the younger children. L.M. lived with Respondents on two occasions and most of the children lived with them at least once.[11] Respondents served as babysitters for all the children numerous times over the better part of a decade.

Petitioner argues that although Respondents babysat the children, such babysitting was sporadic. Petitioner further argues that "the lack of communication" between Respondents and the children since this litigation ensued weighs against visitation. Thus, Petitioner urges, it was error to weigh this factor in favor of visitation.

In support of this argument, Petitioner again points to no evidence to support her position. Every citation to the record relating to this point is to orders or pleadings. It

---

[11] The July 8, 2019 family court order indicates that L.M. lived with Respondents for approximately two years after he was born in 2007. Specifically, when the other children resided with Respondents is unclear due to a lack of an appealable record from the May 15, 2019 hearing. However, the family court specifically found that L.M. "lived in [Respondents'] home on two (2) occasions" and that "most of the children lived with them on at least one occasion." Petitioner could have clarified this issue during the August 26, 2019 hearing, but did not.

would have been a simple task to call a witness at the August 26, 2019 hearing to create a record regarding the relationship between the children and Respondents. Yet, Petitioner chose to focus solely upon the testimony of the children's therapists at that hearing and does not point us to anything specifically within that testimony to support Petitioner's position. The findings and conclusions of the family court were not effectively challenged by Petitioner.

Thus, we cannot say that the family court was incorrect in weighing this factor in favor of visitation. The family court found that Respondents' relationship with the children was shown to include periods of co-habitation and serving as primary babysitters and Petitioner did not point to record evidence to refute those findings.

3) Factor Four – Time From Contact Between The Children and Respondents

There has been no contact between the children and Respondents since September 21, 2018. Respondents filed their visitation petition only fourteen days later. Included with the visitation petition was an *ex parte* request for the children to attend L.C.M.'s memorial service, which was denied by the family court. Essentially, the family court found that delays caused by the process should not be attributable to any action or inaction by Respondents and weighed this factor in favor of visitation. Petitioner argues that there has been a significant period since Respondents last saw the children and that this factor weights against visitation.

In the matter of *Michael C. v. Teressa D.*, No. 13-1077, 2014 WL 4930191 (W. Va. Oct. 2, 2014) (memorandum decision), the adoptive parents of the grandchildren caused the matter to remain in litigation for much longer than necessary. *See id*. at *5. Additionally, the circuit court failed to timely enter orders. *See id.* Ultimately, this Court found that delays that were caused by a party or the court were not attributable to the grandparents when considering this factor. *See id.* Although there is no evidence here that any party was intentionally delaying the family court proceeding or that the family court was slow to rule, we agree with the principle set forth in *Michael C.* that ongoing litigation which "contributed to the lack of . . . grandparent visitation," *Id.*, should not be attributed to Respondents. Thus, the family court correctly allocated this factor in favor of visitation.

4)      Factor Seven – Time Available to The Children and Petitioner

The family court found the time available to the children and Petitioner to be neutral but found such availability should be considered in fashioning visitation. Petitioner argues that this factor should have weighed against visitation as there are many activities, both school and extracurricular, that were not properly considered by the family court. Petitioner also urges that the amount of notice needed for work schedules and the distance and time associated with potential visitation should have tilted this factor against visitation.

Again, Petitioner points to nothing in the record to support this argument. Neither letters between counsel nor the orders and pleadings filed below constitute evidence to refute the family court's findings. Petitioner could have offered testimony on

21

this subject at the August 26, 2019 hearing but did not. Thus, we cannot conclude that the family court erred in finding this factor as neutral.

5) Factor Nine – Abuse by Respondents

There were no substantiated reports of Respondents performing, procuring, assisting, or condoning any abuse or neglect on the children found by the family court. There were allegations that Respondents and L.C.M. were "mean" to the children. However, during L.M.'s first meeting with the guardian ad litem he made unsolicited statements to the guardian ad litem that the other children were going to fabricate abuse allegations. The other children did thereafter allege that they had been abused by Respondents.

Petitioner argues that there were allegations of abuse by Respondents and that Respondents "unfairly attempt[ed] to villainize" Petitioner which were both overlooked by the family court. Thus, Petitioner contends this factor weighs against visitation.

What Petitioner is essentially arguing is that the family court improperly weighed the credibility of the witnesses before it. Again, to refute this finding, Petitioner had the opportunity to offer testimony to establish any such abuse at the August 26, 2019 hearing. Instead, Petitioner merely cites to the family court's order. Such argument is insufficient to establish error since the family court was the trier of fact and had to weigh

the credibility of the allegations made by the children with the statement of L.M. *See State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact."). Thus, we cannot conclude that the family court erred as to this factor.

6)      Factor Ten – The Children Residing With Respondents

It was found by the family court that L.M. lived with Respondents on two occasions and most of the remaining children lived with Respondents on at least one occasion. Petitioner essentially argues that the times were itinerant and that the younger two children did not spend as much time residing with Respondents as the older children. Petitioner contends that the finding by the family court that this factor weighs in favor of visitation was erroneous and that it actually weighs against visitation.

Once again, Petitioner only directs us to orders and pleadings to support this argument. As in our discussion above, Petitioner could easily have offered evidence at the August 26, 2019 hearing to establish precisely when the children did or did not reside with Respondents. Petitioner's argument requires specificity, but none is offered. Based upon that, we cannot say that the family court erred in weighing this factor in favor of visitation.

7) Factor Eleven – Respondents as Significant Caretaker

The family court found Respondents provided care for the children whenever needed, with two small windows of time as exceptions, and the children lived with Respondents as noted in the factor ten analysis. Thus, the family court found this factor to weigh in favor of visitation. Petitioner argues that occasional babysitting does not rise to the level of a significant caretaker but offers no evidence to refute the family court's findings.

Because Petitioner again only cites to the findings of the family court and points to no specific testimony to refute the family court, we believe the family court correctly allocated this factor in favor of visitation. The family court found that Respondents regularly babysat the children for the better part of a decade, that the children lived with Respondents for varying periods of time, and that after Petitioner and L.C.M. divorced, Respondents were supported by Petitioner as the party to supervise the children's visitation with L.C.M. Petitioner cites nothing to refute these findings.

8) Factor Twelve – Petitioner's Preference

As discussed above, this factor must be given special weight and we believe that the family court afforded such weight. First, we note that Petitioner[12] stated early on

_____

[12] We commend Petitioner on her efforts to protect the children considering the tragedy that they witnessed. In the face of extreme adversity, her efforts demonstrated

(continued . . .)

24

in the proceedings that she was not against visitation. She clearly communicated to the guardian ad litem that she believed the children should have visitation with Respondents when they are ready and she allowed a letter from Respondents to be read to the children during a therapy session. She also purchased cell phones for the older children and programmed Respondents' phone numbers into them to allow the children to contact Respondents whenever they wanted. In fact, while L.C.M. was still living, Petitioner had no problems with allowing Respondents to babysit the children and she insisted Respondents supervise L.C.M.'s visitation with the children.

Later in the proceeding, Petitioner changed her position and clearly espoused that she wanted Respondents to have no visitation with the children. Based upon this change in position, the family court placed significant weight upon Petitioner's change of mind and found that this factor weighed against visitation. The parties agree that this factor weighs against visitation. However, Petitioner vehemently argues that the family court did not accord this factor the "special weight" it requires.

It is clear to us that the family court did attach the special weight required by *Troxel* to Petitioner's preference but, nonetheless, ultimately found in favor of Respondents. As we have said:

---

unmatched love and compassion for the children. Following the shooting, she immediately enrolled them in therapy sessions and has strongly advocated for them throughout the process. Our affirmance of the lower tribunals should not in any way negatively reflect upon Petitioner.

25

A fundamental principle, properly gleaned from the scholarly writings and legal opinions reviewed by this Court, is that the pronouncements of *Troxel* do not predispose every case to an ultimate determination favoring the natural parent in a complete and conclusive manner. An assessment of the specific circumstances of each case is still required, and while the reviewing court must accord special weight to the preferences of the parent, the best interests of the child are not to be ignored and must be included as a critical component of the dialogue regarding visitation or custody.

*In re K.H.*, 235 W. Va. 254, 265, 773 S.E.2d 20, 31 (2015) (internal footnote omitted).

Thus, we believe the family court did properly place significant weight upon this factor. In its order, it stated that "[t]he [c]ourt believes it has given this factor special weight in rendering a decision" and "[e]ven giving the twelfth factor 'special weight,' the [c]ourt finds by a preponderance of the evidence that the totality of the thirteen (13) factors weigh in favor of a grant of reasonable grandparent visitation."

Further, in its September 19, 2019 order, the family court modified the original visitation schedule established in its July 8, 2019 order. As a result of Petitioner's concerns, instead of a graduated visitation schedule as originally crafted, the family court adopted reunification therapy as the keystone to allowing future visitation. Additionally, the family court afforded the reunification therapist great deference in making determinations regarding the progress of reunification. These changes clearly demonstrate that the family court accorded special weight to Petitioner's preference as required under

26

*Troxel* by not ordering unfettered grandparent visitation but requiring a reunification therapist to determine if such visitation could be effectively accomplished.

9)      Factor Thirteen – Other Relevant Factors In Best Interest of The Children

The family court found this factor to weigh in favor of visitation. This finding stems from the family court's concern that Petitioner would never encourage the children to have visitation with Respondents. Further, given the acrimonious relationship between Petitioner and Respondents, the family court doubted the children would ever feel safe in expressing a desire for visitation. Thus, the family court found that in the best interest of the children, this factor weighed in favor of visitation.

Petitioner essentially contends that these findings tread into *Troxel* territory and that, because Petitioner does not want visitation, she is under no obligation to encourage the children to engage in it. However, this factor is for the family court to weigh information through the prism of what is in the best interest of the children and Petitioner points to nothing but the family court's orders for her position. Given that, we cannot say that the family court erred, and we concur that this factor weighs in favor of visitation.

C.      Testimony of The Children's Therapists – August 26, 2019

Finally, we address Petitioner's argument regarding the testimony of the children's therapists that the children do not want to visit with Respondents and that it was their opinion that grandparent visitation was not in the children's best interest. We agree

27

with Petitioner that this testimony was relevant. However, as noted above, Petitioner did not point to the actual testimony gleaned from the therapists at the August 26, 2019 hearing but instead directed us to the findings in the family court's orders. Further, Petitioner has not pointed us to where in the Legislative framework the testimony of the therapists should be weighed.

It is clear that the family court gave serious and thoughtful consideration to the therapists' opinions. In fact, the family court used the therapists' testimony as a basis to modify the visitation plan from a regimented schedule to one in which the determination of when, if ever, visitation would occur hinged upon the recommendation of the reunification therapist. In its September 19, 2019 order, the family court required Respondents and the children to undergo reunification counseling. The requested grandparent visitation would only commence "in accordance with the recommendations of the reunification therapist." The family court deferred to the expertise of the reunification therapist as to when joint therapy would commence and notified the parties of its intent to conduct review hearings to monitor progress. Finally, the order excluded A.M. and E.M. from the sessions, deferring any decision regarding visitation between them and Respondents for another time. We believe the family court gave careful consideration to the concerns of the children's therapists and responded to those concerns to ensure the children would not be subjected to grandparent visitation until recommended by the reunification therapist.

Thus, the family court found, and we agree, that factors one, two, four, eight, nine, ten, eleven, and thirteen weigh in favor of a grant of grandparent visitation. The sixth and seventh factors were neutral. Factors three, five, and twelve weigh against a grant of grandparent visitation. Therefore, the family court found eight factors were in favor of visitation, two were neutral, and three were against, including the twelfth, which it gave special weight. We have previously "emphasize[d] that the objection of a parent would not serve to defeat a grandparent's attempt to seek visitation in every instance." *Visitation of Cathy L.(R.)M. v. Mark Brent R.*, 217 W. Va. 319, 328, 617 S.E.2d 866, 875 (2005) (footnote omitted). This case represents one of those instances where weighing the thirteen factors tipped the balance in favor of a reunification plan that could ultimately lead to visitation. We believe Petitioner's failure to cite to record evidence in support of her position leads us to only one logical conclusion – that she failed to meet her burden of showing the judgment below was erroneous. The family court's order affords Petitioner's preference against visitation special weight in accordance with the holding in *Troxel*. Moreover, the family court's September 19, 2019 order does not immediately grant grandparent visitation but instead requires reunification therapy, gives great deference to the reunification therapist to determine the course of reunification, allows for an immediate hearing if there is any negative impact on the children, and provides for review hearings to monitor the children's progress. Therefore, we cannot conclude that the family court erred.

29

## IV. CONCLUSION

For the foregoing reasons, we affirm the circuit court's December 19, 2019 order affirming the family court's establishment of reunification therapy as a means to provide for future grandparent visitation.

Affirmed.