**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **K.K.**

**No. 22-892** (Berkeley County CC-02-2016-JA-166)

**MEMORANDUM DECISION**

Petitioners L.S. and S.E.,[1] intervenors below and K.K.'s paternal grandparents, appeal the Circuit Court of Berkeley County's October 24, 2022, order terminating their grandparent visitation with K.K.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The proceedings giving rise to this appeal were initiated in 2016, when the DHHR filed a petition alleging abuse and/or neglect of the subject child by her mother, N.K.[3] At a hearing in September 2017, the circuit court terminated N.K.'s parental rights to the child due to her inability to correct issues of substance abuse. Before the court could conduct a hearing on the child's return to the nonabusing father, who is petitioner L.S.'s son, he died of an overdose in petitioners' home shortly after the September 2017 hearing. Following the father's death, it appears that the child remained in the custody of the maternal grandmother, respondent M.K. The court initially ordered petitioners and M.K. to participate in mediation to determine a custodial or grandparent visitation schedule that was in the child's best interests. Ultimately, the court permitted M.K. to adopt the child following a hearing in March 2019, although petitioners were awarded ongoing visitation with the child on alternating Thursdays through Monday afternoons.

In April 2022, M.K. filed a motion to modify petitioners' visitation because the child was beginning pre-kindergarten five days per week, rendering the visitation schedule untenable. As the

---

[1]Petitioners appear by counsel Todd W. Reed. The West Virginia Department of Health and Human Resources ("DHHR") appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Lee Niezgoda. Counsel Emily R. Mowry appears as the child's guardian ad litem ("guardian"). Respondent Mother M.K. appears by counsel Paul G. Taylor.

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3]Those proceedings also addressed one other child and additional adult respondents, none of whom are relevant to the resolution of the instant matter.

record shows, permitting the visitation schedule to continue unaltered would have required the child to miss days of the pre-kindergarten program and therapies for speech and physical issues. M.K. also alleged that petitioners were interfering with her exercise of custody and attempting to alienate her from the child. Petitioners responded by filing various pleadings in which they alleged that M.K. was abusing and/or neglecting the child by failing "to address the child's legitimate health and socialization concerns timely" and exposing her to the mother whose rights had been terminated, among other allegations. Petitioners also alleged that M.K. interfered with their visitation with the child.

Thereafter, the guardian filed a report detailing her investigation into the issues. According to the guardian, petitioners questioned the validity of the child's therapy program and sought to take the child out of state knowing it would disrupt her participation in therapy. The guardian also addressed a recording petitioners made in which they "essentially interrogated" the child about possible abuse or neglect by M.K. and "tr[ied] to put words in [the child's] mouth." At one point during the recording, the child "start[ed] whimpering and clearly did not want to talk about this," to which one of the petitioners stated, "I'm so mad." In another recorded conversation, petitioners "tried to make [the child] sad . . . that she would be starting school." According to the guardian, none of the recordings contained any spontaneous disclosures by the child, but, instead, were "full of situations where [one of the petitioners] was trying to prompt [the child] into making statements against" M.K. The guardian also indicated that petitioners, "being unsatisfied with [the guardian's] investigation, had hired a private investigator to follow [M.K.] and the [child] to obtain 'evidence' of some wrongdoing." The guardian believed that petitioners' involvement of a third-party in a confidential court proceeding called into question her ability to review any documents prepared by the investigator and highlighted instances of other individuals who appeared to have obtained information about the confidential proceedings from petitioners. The guardian concluded that, in response to petitioners' claims that M.K. was unfit, she, despite working night shifts, "has made every effort to ensure [the child got] to every necessary appointment, school, extracurricular activities, and visitation" with petitioners. M.K. further had the child "enrolled in multiple types of therapy and was able to speak at length . . . about . . . [the child's] physical, developmental, and educational needs." In short, the guardian asserted that she had seen no evidence that M.K. was unfit or acting contrarily to the child's best interests. However, the guardian expressed concerns about petitioners' appropriateness and "their excessive efforts to investigate the minute details" of the lives of M.K. and the child. Based on their "repeated and excessive actions," the guardian expressed concern that petitioners were not acting in the child's best interests and were, in fact, "causing her anxiety and stress."

In October 2022, the court held a final hearing on the issue of grandparent visitation, during which petitioners argued that the guardian took their actions "out of context and misrepresented" them to the court. The court then ruled on the issue of visitation, going through each of the required factors set forth in West Virginia Code § 48-10-502[4] as follows: (1) the child's age resulted in her

---

[4]West Virginia Code § 48-10-502 sets forth the following:

In making a determination on a motion or petition the court shall consider the following factors:
(1) The age of the child;

starting school, which was a change in circumstances that necessitated modification of grandparent visitation; (2) the child's relationship with petitioners was "difficult" because the child was "constantly tugged between two families and feels . . . that there is no way to resolve the conflict"; (3) the relationship between M.K. and petitioners was not positive; (4) visitation had been stopped during the proceedings while the parties worked through issues; (5) visitation with petitioners would have a negative impact on the child's relationship with M.K. given petitioners' negative comments to the child about M.K. and other conduct set forth in the record; (6) this factor is inapplicable due to the death of the child's father and the termination of her biological mother's rights; (7) the child and her family's schedule was limited because of the child's school, therapies, and extracurriculars, in addition to M.K.'s work schedule impacting her ability to transport the child to visits; (8) petitioners had not acted in good faith during the proceedings "as they have continually tried to negatively affect the relationship" between the child and M.K.; (9) the child's biological father died of a drug overdose in petitioners' home during the underlying case; (10) the child never resided with petitioners; (11) petitioners were never caretakers for the child; (12) M.K. "tried her best to work with" petitioners, but it is clear petitioners and M.K. are unable to work together; and (13) it was not in the child's best interest "to have people continuously in conflict and not able to work together." The court further addressed petitioners' attempts to undermine M.K.'s authority to determine what is in the child's best interests, such as when petitioners had the child "baptized into the Catholic Church without inviting [M.K.] or consulting with her." Based on these considerations, the court concluded that visitation between petitioners and the child would substantially interfere with the parent-child relationship and would not be in the child's best interests. Accordingly, the court ordered that petitioners have no visitation with the child and that any contact between them be left to M.K.'s discretion. It is from this order that petitioners appeal.

(2) The relationship between the child and the grandparent;
(3) The relationship between each of the child's parents or the person with whom the child is residing and the grandparent;
(4) The time which has elapsed since the child last had contact with the grandparent;
(5) The effect that such visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;
(6) If the parents are divorced or separated, the custody and visitation arrangement which exists between the parents with regard to the child;
(7) The time available to the child and his or her parents, giving consideration to such matters as each parent's employment schedule, the child's schedule for home, school and community activities, and the child's and parents' holiday and vacation schedule;
(8) The good faith of the grandparent in filing the motion or petition;
(9) Any history of physical, emotional or sexual abuse or neglect being performed, procured, assisted or condoned by the grandparent;
(10) Whether the child has, in the past, resided with the grandparent for a significant period or periods of time, with or without the child's parent or parents;
(11) Whether the grandparent has, in the past, been a significant caretaker for the child, regardless of whether the child resided inside or outside of the grandparent's residence;
(12) The preference of the parents with regard to the requested visitation; and
(13) Any other factor relevant to the best interests of the child.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, petitioners argue that the court erred in terminating their visitation with the child because the court incorrectly applied the factors from West Virginia Code § 48-10-502.[5] First, petitioners argue that the court's findings were legally deficient. Citing *Meagan S. v. Terry S.*, 242 W. Va. 452, 836 S.E.2d 419 (2019), petitioners argue that the circuit court's finding were "sparse and/or conclusory" and, in several instances, simply constituted "adoption of the [guardian's] findings wholesale." These arguments, however, have no basis in the law or the record, as the circuit court's findings were sufficient upon which to base termination of petitioners' visitation.

Critically, the circuit court in *Meagan S.* made *no* findings in regard to the factors set forth in West Virginia Code § 48-10-502. *Meagan S.*, 242 W. Va. at 456, 836 S.E.2d at 423. "Instead, it merely provided '[t]he Court finds that the recommendation of the [GAL] to award some visitation to [Grandparents] is in the best interest of the minor child and adequately takes into consideration the factors set forth in WV Code § 48-10-502'" and further "did not state which factors weighed in favor of or against grandparent visitation." *Id.* This is in stark contrast to the matter on appeal, where the circuit court enumerated all thirteen of the mandatory factors and made thorough findings necessary to rule on the issue. *See Turley v. Keesee*, 218 W. Va. 231, 234, 624 S.E.2d 578, 581 (2005) (requiring that a court "must thoroughly evaluate how each factor applies to the specific facts and allegations contained in the case before it"). While petitioners allege that the court's findings "express more feeling than analysis," they premise this allegation on the fact that the court based them "upon bias or historical information." Essentially, petitioners take issue with the weight the court afforded the evidence below by couching their arguments in terms this Court has previously used to address insufficient findings in cases involving grandparent visitation. *See id.* ("Merely restating the thirteen factors and tacking on to them the court's 'feeling' that each factor has been satisfied is not enough."). Contrary to these claims, the court included detailed findings and conclusions as to each factor, and petitioners' disagreement with the court's weighing of the evidence cannot entitle them to relief. *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact.").

---

[5]Petitioners raise a separate assignment of error in which they attack the lower court's failure to conclude that M.K. was an unfit parent for engaging in abuse and/or neglect of the child. Although the circuit court entertained petitioners' arguments in this regard, we decline to address this assignment of error on appeal because the issue was not properly before the circuit court. As the DHHR correctly points out in its response brief, no petition alleging abuse and/or neglect was pending against M.K. at any time relevant to this appeal. *See* W. Va. Code § 49-4-601(a) (providing, in relevant part, that "[i]f the department or a reputable person believes that a child is neglected or abused, the department or the person may present a petition setting forth the facts to the circuit court"). Accordingly, we decline to address petitioners' arguments regarding alleged abuse and/or neglect by M.K., as they have no bearing on the court's ultimate decision to terminate their visitation with the child.

While petitioners attack the basis for the court's findings and application of certain factors, it is, in fact, petitioners who have misapplied the facts and legal issues at play. For example, in regard to factor ten, where the child resided, petitioners assert that the court "failed to take into consideration that [p]etitioners had extensive visitation with the child," thereby demonstrating their own self-serving interpretation of that factor. Far from misapplying this consideration, the court addressed the issue squarely presented therein. Petitioners also spend a significant portion of their brief defending their hiring of a private investigator to obtain evidence in support of their allegations that M.K. was unfit. What petitioners fail to recognize is that this fact clearly weighs against them, as it evidences their extensive attempts to undermine M.K.'s parental relationship with the child. While petitioners argue that the guardian invited them to provide specific information to support their allegations against M.K., nothing in the record demonstrates that such excessive and intrusive conduct was encouraged or approved. Indeed, petitioners represented that they *already* possessed evidence of their claims and, when asked to produce this evidence, took it upon themselves to involve a third party in the matter. In short, all of the court's findings with which petitioners take issue are based on similar displeasure with the ultimate outcome and do not establish reversible error. On the contrary, the court properly concluded that petitioners' visitation would interfere with the parental relationship between M.K. and would not be in the child's best interest. *See* W. Va. Code 48-10-501 ("The circuit court or family court shall grant reasonable visitation to a grandparent upon a finding that visitation would be in the best interests of the child and would not substantially interfere with the parent-child relationship."). While petitioners argue that their actions were taken out of context, it is difficult to believe there is a context in which a court could find that a grandparent's decision to baptize a child without involving a parent—or much of the other conduct petitioners engaged in—does not undermine that parent's relationship with the child or run counter to the child's best interests. Accordingly, the court did not err in making these findings.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 24, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: October 25, 2023

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn